CHARLES FALZONE AND MABEL FALZONE, PLAINTIFFS-APPELLANTS, v. LEONARD R. BUSCH, DEFENDANT-RESPONDENT.

Argued September 14, 1965—Decided October 25, 1965.

*Mr. Herbert C. Kaplan* argued the cause for the plaintiffs-appellants (*Messrs. Kaplan, Feingold & Kaplan,* attorneys; *Mr. Herbert C. Kaplan* on the brief).

*Mr. John A. Lynch, Jr.* argued the cause for the defendant-respondent (*Messrs. Lynch, Murphy, Mannion & Lynch,* attorneys; *Mr. John A. Lynch, Jr.,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The question before us on this appeal is whether the plaintiff may recover for bodily injury or sickness resulting from fear for her safety caused by a negligent defendant, where the plaintiff was placed in danger by such negligence, although there was no physical impact.

The complaint alleges in the first count that the plaintiff, Charles Falzone, was standing in a field adjacent to the roadway when he was struck and injured by defendant's negligently driven automobile. The second count alleges that the plaintiff, Mabel Falzone, wife of Charles, was seated in his lawfully parked automobile close to the place where her husband was struck and that the defendant's negligently driven automobile "veered across the highway and headed in the direction of this plaintiff," coming "so close to plaintiff as to put her in fear for her safety." As a direct result she became ill and required medical attention. There is no allegation that her fear arose from apprehension of harm to her husband. In the third count plaintiff, Charles Falzone, seeks damages *per quod.*

The Law Division granted the defendant's motion for summary judgment on the second and third counts, holding that it was constrained to follow the existing New Jersey rule that where there is no physical impact upon the plaintiff, there can be no recovery for the bodily injury or sickness resulting from negligently induced fright. We certified the plaintiffs' appeal before it was considered by the Appellate Division.

Neither this Court nor the former Court of Errors and Appeals has considered a case directly presenting this question. However, since a decision of our former Supreme Court in 1900, *Ward v. West Jersey & Seashore R. R. Co.*, 65 *N. J. L.* 383, it has been considered settled that a physical impact upon the plaintiff is necessary to sustain a negligence action. See *e.g., Greenburg v. Stanley*, 51 *N. J. Super.* 90, 106 (*App. Div.* 1958), modified on other grounds 30 *N. J.* 485 (1959).

In *Ward*, the complaint alleged that the plaintiff, while driving on a highway, was permitted without warning from the defendant railroad to drive upon a public crossing of its tracks in the face of an approaching train; that the defendant, by improperly lowering the gates before the plaintiff was off the tracks, subjected him to "great danger of being run down and killed by said train" and caused him to be "shocked, paralyzed, and otherwise injured." 65 *N. J. L.*, at *p.* 383. On the defendant's demurrer, the court stated the issue: "[W]hether, in an action for negligence, the mere apprehension of personal injuries, which are not in fact received, will support an action, when physical suffering follows as a consequence of the mental disturbance." *Id.*, at *p.* 384. The court recognized a division of authority in other jurisdictions but chose to follow those decisions which denied liability in the absence of impact.[1] Three reasons for denying recovery were set forth in the opinion. The first was that physical injury was not the natural and proximate result of the negligent act:

"The doctrine of non-liability affirmed in the several opinions already referred to, rests upon the principle that a person is legally responsible only for the *natural* and proximate results of his negligent

---

[1] *Wyman v. Leavitt*, 71 *Me.* 227, 36 *Am. Rep.* 303 (*Sup. Jud. Ct.* 1880) ; *Ewing v. Pittsburg, C., C. & St. L. Ry. Co.*, 147 *Pa.* 40, 23 *A.* 340 (*Sup. Ct.* 1892) ; *Mitchell v. Rochester Ry. Co.*, 151 *N. Y.* 107, 45 *N. E.* 354 (*Ct. App.* 1896) ; *Spade v. Lynn & Boston R. Co.*, 168 *Mass.* 285, 47 *N. E.* 88 (*Sup. Jud. Ct.* 1897) ; and *Victorian Railways Commissioners v. Coultas*, 13 *App. Cas.* 222 (1888).

act. Physical suffering is not the probable or natural consequences of fright, in the case of a person of ordinary physical and mental vigor; and in the general conduct of business, and the ordinary affairs of life, although we are bound to anticipate and guard against consequences, which may be injurious to persons who are liable to be effected [*sic*] thereby, we have a right, in doing so, to assume, in the absence of knowledge to the contrary, that such persons are of average strength both of body and of mind." *Id.*, at *p.* 385.

Second, the court concluded that since this was the first action of its kind in New Jersey, the consensus of the bar must have been that no liability exists in the absence of impact. *Id.*, at *pp.* 385–386. The third reason was "public policy" which the court explained by quoting with approval from *Mitchell v. Rochester Ry. Co.*, 151 *N. Y.* 107, 45 *N. E.* 354 (*Ct. App.* 1896) :

"If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigations in cases where the injury complained of may be easily feigned without detection, and where the damages must rest upon mere conjecture and speculation. The difficulty which often exists in cases of alleged physical injuries, in determining whether they exist, and, if so, whether they were caused by the negligent act of the defendant, would not only be greatly increased, but a wide field would be opened for unrighteous[2] or speculative claims." *Ward, supra,* 65 *N. J. L.*, at *p.* 386.

We think that the reasons assigned in *Ward* for denying liability are no longer tenable, and it is questionable if they ever were. The court there first stated that it is not "probable or natural" for persons of normal health to suffer physical injuries, when subjected to fright, and that since a person whose acts cause fright alone could not reasonably anticipate that physical harm would follow, such acts cannot constitute negligence as to the frightened party. It appears that the court decided as a matter of law an issue which we believe is properly determinable by medical evidence. An Irish court as early as 1890 recognized the possibility of a causal connection

---

[2] The word "unrighteous" is an apparent misquotation; the New York Report shows that the New York Court of Appeals used the term "fictitious."

between fright and physical injury in a normal person, Baron Palles expressing his view in these words:

> "* * * I am of opinion that, as the relation between fright and injury to the nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any Court to lay down, as a matter of law, that if negligence cause fright, and such fright, in its turn, so affects such structures as to cause injury to health, such injury cannot be 'a consequence which, in the ordinary course of things would flow from the' negligence, unless such injury 'accompany such negligence in point of time.' " *Bell v. Great Northern Railway Co.*, L. R. 26 Ir. 428, 442.

And even in *Spade v. Lynn & B. R. Co.*, 168 *Mass.* 285, 288, 47 *N. E.* 88, 89 (*Sup. Jud. Ct.* 1897) (relied upon in *Ward*), where recovery was denied for the physical consequences of fright, the court recognized that:

> "Great emotion, may, and sometimes does, produce physical effects * * *. A physical injury may be directly traceable to fright, and so may be caused by it. We cannot say, therefore, that such consequences may not flow proximately from unintentional negligence; * * *"

Moreover, medical knowledge on the relationship between emotional disturbance and physical injury has steadily expanded, and such relationship seems no longer open to serious challenge. See *e. g.*, Smith, "Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli," 30 *Va. L. Rev.* 193 (1944); Smith and Solomon, "Traumatic Neuroses in Court," 30 *Va. L. Rev.* 87 (1943); Goodrich, "Emotional Disturbance as Legal Damage," 20 *Mich. L. Rev.* 497 (1922).

New Jersey courts have not generally adhered to the notion that fright cannot be the proximate cause of substantial physical injury, and three rules of law inconsistent with the *Ward* doctrine have developed. It has been held that where a person is injured attempting to avoid a hazard negligently created by another, he may recover for the physical consequences of fright even though the immediate injury suffered was slight and was not a link in the causal chain. Thus, in *Buchanan v. West Jersey R. R. Co.*, 52 *N. J. L.* 265 (*Sup.*

*Ct.* 1890), cited with approval in *Ward,* a woman standing in a railroad station threw herself to the platform to avoid being struck by a protruding timber on a passing train. "By reason of the shock to her nervous system occasioned by this peril, her health was seriously impaired." 52 *N. J. L.,* at *p.* 266. The court allowed recovery even though her fright, and not the injury, if any, sustained in the fall, caused her physical suffering. See also *Tuttle v. Atlantic City R. R. Co.,* 66 *N. J. L.* 327 (*E. & A.* 1901). Our courts have also been willing to allow recovery for physical injury traceable directly to fright when there is any impact, however inconsequential or slight. *Porter v. Delaware, Lackawanna & W. R. R. Co.,* 73 *N. J. L.* 405 (*Sup. Ct.* 1906); and *Kennell v. Gershonovitz Bros.,* 84 *N. J. L.* 577 (*Sup. Ct.* 1913). See also *Smith v. Montclair Brown and White Cab Co.,* 6 *N. J. Misc.* 57, 139 *A.* 904 (*Sup. Ct.* 1928) and *Greenburg v. Stanley, supra.* The application of this rule was illustrated in *Porter v. Delaware, Lackawanna & W. R. R. Co., supra,* where a woman became ill as the result of her shock at seeing a railroad bridge fall near the place where she was standing. She testified that something fell on her neck and that dust entered her eyes. In allowing recovery for the physical consequences of her fright, the court said either the small injury to her neck or the dust in her eyes was a sufficient "impact" to distinguish the case from *Ward.* And third, recovery has been permitted where physical suffering resulted from a willfully caused emotional disturbance. *Kuzma v. Millinery Workers Union Local No. 24,* 27 *N. J. Super.* 579, 591–592 (*App. Div.* 1953). See also *Spiegel v. Evergreen Cemetery Co.,* 117 *N. J. L.* 90 (*Sup. Ct.* 1936); and *Harris v. Delaware, Lackawanna and W. R. R. Co.,* 77 *N. J. L.* 278 (*Sup. Ct.* 1909).

The second reason given in *Ward* for denying recovery was that the absence of suits of this nature in New Jersey demonstrated the concurrence of the bar with the rule of no liability. We do not believe the court meant to imply that it would deny recovery because of opinions held by lawyers on the legal question presented. And if the court intended to bar the

cause of action because of a lack of precedent in this State, a sufficient answer is that the common law would have atrophied hundreds of years ago if it had continued to deny relief in cases of first impression. See *State v. Culver*, 23 *N. J.* 495, 505–507 (1957).

Public policy was the final reason given in *Ward* for denying liability. The court was of the opinion that proof or disproof of fear-induced physical suffering would be so difficult that recovery would often be based on mere conjecture and speculation, and that the door would be opened to extensive litigation in a class of cases where injury is easily feigned. We realize that there may be difficulties in determining the existence of a causal connection between fright and subsequent physical injury and in measuring the extent of such injury. However, the problem of tracing a causal connection from negligence to injury is not peculiar to cases without impact and occurs in all types of personal injury litigation. See *e.g.*, *Smith v. Brennan*, 31 *N. J.* 353, 365 (1960) ; *Van Rensselaer v. Viorst*, 136 *N. J. L.* 628, 631 (*E. & A.* 1947) ; and *Millman v. United States Mortgage & Title Guaranty Co.*, 121 *N. J. L.* 28, 36–37 (*Sup. Ct.* 1938). See also Goodrich, *supra*, at *pp.* 503–507. As Judge Burke said for the New York Court of Appeals in dealing with the same problem :

"In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant's negligence. In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims." *Battalla v. State*, 10 *N. Y.* 2d 237, 242, 219 *N. Y. S.* 2d 34, 176 *N. E.* 2d 729, 731–732 (1961).

In any event, difficulty of proof should not bar the plaintiff from the opportunity of attempting to convince the trier of fact of the truth of her claim.

■ As to the possibility of actions based on fictitious injuries, a court should not deny recovery for a type of wrong

which may result in serious harm because some people may institute fraudulent actions. Our trial courts retain sufficient control, through the rules of evidence and the requirements as to the sufficiency of evidence, to safeguard against the danger that juries will find facts without legally adequate proof. *Smith v. Brennan, supra,* 31 *N. J.*, at *pp.* 365–366. Moreover, the allowance of recovery in cases where there has been an impact, however slight, negates the effectiveness of the no impact rule as a method of preventing fraudulent claims. As stated by Dean McNiece in his comprehensive article dealing with tort liability for psychic injuries:

"To hold that all honest claims should be barred merely because otherwise some dishonest ones would prevail is stretching the public policy concept very close to the breaking point, especially since it is quite as simple to feign emotional disturbance plus slight impact and get in 'under the wire' of one of the exceptions as it is to feign emotional disturbance sans impact. The arbitrary denial of recovery in all cases not falling within the realm of one or another of the exceptions discourages the bringing of meritorious actions and at the same time allows the prosecution of fabricated claims, for surely those capable of perjuring evidence will not hesitate to manufacture one additional feature of the occurrence—a slight impact—to insure recovery." McNiece, "Psychic Injury and Liability in New York," 24 *St. John's L. Rev.* 1, 31 (1949).

*Ward* also asserts that public policy demands denial of recovery in no impact cases to prevent a "flood of litigations." However, there is no indication of an excessive number of actions of this type in other states which do not require an impact as a basis for recovery. And, of more importance, the fear of an expansion of litigation should not deter courts from granting relief in meritorious cases; the proper remedy is an expansion of the judicial machinery, not a decrease in the availability of justice.

The many eminent legal scholars who have considered the rule denying recovery in the absence of impact are virtually unanimous in condemning it as unjust and contrary to ex-

perience and logic.[3] The 1888 English case of *Victorian Parkways Commissioners v. Coultas*, 13 *App. Cas.* 222, which initiated the doctrine in England and which was followed in *Ward*, was repudiated in *Dulieu v. White & Sons*, 2 *K.B.* 669 (1901),[4] only one year after *Ward* was decided. And *Mitchell v. Rochester Ry. Co., supra*, upon which the court in *Ward* relied so heavily, was expressly overruled in 1961 by the New York Court of Appeals. *Battalla v. State, supra*. A great majority of jurisdictions now hold that where physical injury results from wrongfully caused emotional stress, the injured person may recover for such consequences notwithstanding the absence of any physical impact upon him at the time of the mental shock. See *e.g., Robb v. Pennsylvania Railroad Company, Del.*, 210 *A.* 2d 709 (*Sup. Ct.* 1965) ; *Battalla v. State, supra*; *Colla v. Mandella*, 1 *Wis.* 2d 594, 85 *N. W.* 2d 345, 64 *A. L. R.* 2d 95 (*Sup. Ct.* 1957) ; *Orlo v. Con-*

---

[3] See *Prosser, Torts* § 55, *pp.* 349–352 (3d ed. 1964) ; 2 Harper and James, *The Law of Torts* § 18.4, *pp.* 1031–1039 (1956) ; McNiece, "Psychic Injury and Tort Liability in New York," 24 *St. John's L. Rev.* 1 (1949) ; Smith, "Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli," 30 *Va. L. Rev.* 193 (1944) ; Smith and Solomon, "Traumatic Neuroses in Court," 30 *Va. L. Rev.* 87 (1943) ; Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 *Harv. L. Rev.* 1033 (1936) ; *1936 Report of N. Y. Law Rev. Comm.*, 375; Green, " 'Fright' Cases," 27 *Ill. L. Rev.* 761 (1933) ; Hallen, "Damages for Physical Injuries Resulting from Fright or Shock," 19 *Va. L. Rev.* 253 (1933) ; Wilson, "The New York Rule as to Nervous Shock," 11 *Cornell L. Q.* 512 (1926) ; Goodrich, "Emotional Disturbance as Legal Damage," 20 *Mich. L. Rev.* 497 (1922) ; Throckmorton, "Damages for Fright," 34 *Harv. L. Rev.* 260 (1921) ; Burdick, "Tort Liability for Mental Disturbance and Nervous Shock," 5 *Colum. L. Rev.* 179 (1905) ; Bohlen, "Right to Recover for Injury Resulting from Negligence Without Impact," 41 *Am. L. Reg.* 141 (1902).

[4] "Later cases in the Admiralty Division of the High Court of Justice and in the House of Lords treat *Dulieu v. White* as settling the law in England; and it may, therefore, be said that the *Coultas* case has been overruled and the doctrine established in England that there may be recovery for physical injuries resulting from nervous shock without proof of actual impact." Throckmorton, *supra*, note 2, at *p.* 262.

*necticut Co.*, 128 *Conn.* 231, 21 *A.* 2*d* 402 (*Sup. Ct. Err.* 1941); *Chiuchiolo v. New England Wholesale Tailors*, 84 *N. H.* 329, 150 *A.* 540 (*Sup. Ct.* 1930); *Restatement of the Law of Torts* § 436(a)(2). *Contra, Bosley v. Andrews*, 393 *Pa.* 161, 142 *A.* 2*d* 263 (1958). See also Annotation, "Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong," 64 *A. L. R.* 2*d* 100 (1959). Indeed, Dean Prosser has recently written that the impact requirement "is almost certainly destined for ultimate extinction." *Prosser, Torts* § 55, *p.* 351 (*3d ed.* 1964).

 Our conclusion is that *Ward* should no longer be followed in New Jersey. We are not dealing with property law, contract law or other fields where stability and predictability may be crucial. We are dealing with torts where there can be little, if any, justifiable reliance and where the rule of *stare decisis* is admittedly limited. *Collopy v. Newark Eye and Ear Infirmary*, 27 *N. J.* 29, 42; *Smith v. Brennan, supra*, 31 *N. J.*, at *p.* 361. We hold, therefore, that where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright. Of course, where fright does not cause *substantial* bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability.

 We recognize that where there is no impact a defendant may be unaware of the alleged incident and thus not forewarned to preserve evidence upon which he might base his defense. However, this consideration should not be sufficient to bar a meritorious claim. Rather, it is appropriate that the trial judge charge the jury that an undue delay in notifying the defendant of the incident and the resulting injury may weigh heavily in determining the truth of the plain-

tiff's claim. It is unnecessary to decide here whether an undue delay short of the statute of limitations would justify a dismissal by the trial court.

The plaintiffs should be given the opportunity of submitting proof that Mrs. Falzone suffered substantial bodily injury or sickness and that such bodily injury or sickness was the proximate result of the defendant's negligence.

Reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For affirmance*—None.