Salvatore **TUMMINELLO**, Plaintiff,

v.

**The BERGEN EVENING RECORD, INC., United Press International, Inc., Associated Press, Inc., WABC–TV, Inc., WCBS–TV, Inc., William Soiffer, and WNBC–TV, Inc.,** Defendants.

Civ. A. No. 77–2447.

United States District Court,
D. New Jersey.

May 23, 1978.

John W. Surgent, Clifton, N.J., for plaintiff.

Donald A. Klein, Winne, Banta, Rizzi & Harrington, Hackensack, N.J., for defendants The Bergen Evening Record Corp. and William Soiffer.

Frederick L. Whitmer, Pitney, Hardin & Kipp, Morristown, N.J., for defendants ABC and CBS.

Arthur J. Lesemann, Mazer, Lesemann & Rupp, Hackensack, N.J., for defendant The Associated Press.

McElroy, Connell, Foley & Geiser, Newark, N.J., for defendant United Press International, Inc.

## OPINION

STERN, District Judge.

Salvatore Tumminello instituted this action against the Bergen Evening Record [Record]; William Soiffer, one of its reporters; United Press International, Inc. [UPI]; Associated Press, Inc. [AP]; American Broadcasting Companies [ABC]; CBS, Inc. [CBS]; and National Broadcasting Company, Inc. [NBC]. The defendants now move to dismiss the complaint for failure to state a claim under F.R.Civ.P. 12(b)(6) or for summary judgment under F.R.Civ.P. 56; or for judgment on the pleadings under F.R. Civ.P. 12(c).* Because on a motion for judgment on the pleadings, all well-pleaded material allegations of the opposing party are taken as true, see 2A Moore's Federal Practice ¶ 12.15, at 1243, and because in this case, it is unnecessary to look beyond the plaintiff's pleading, analytically the motions can all be treated as motions to dismiss for failure to state a claim. They will be granted.

The allegations of the complaint are as follows. Plaintiff is a citizen of Florida. Defendant Soiffer is a citizen of New Jersey. The corporate defendants are corporations of states other than Florida with principal places of business in states other than Florida. The amount in controversy allegedly exceeds $10,000, exclusive of interest and costs.

On November 16, 1977, at a meeting of the Paramus Chamber of Commerce, the Honorable Morris Pashman, Associate Justice of the Supreme Court of New Jersey, delivered a speech. Defendant Soiffer, a reporter employed by the Record, was present at that meeting. After the meeting, Soiffer wrote a story which stated that Justice Pashman had announced that the Supreme Court of New Jersey would rule the following day that a five-year statute of limitations applies to the crime of murder. Notwithstanding Justice Pashman's request that no story be published until after the Supreme Court officially announced its ruling, and notwithstanding a lack of confirmation, the story was copyrighted by the Record, picked up by the defendant wire services AP and UPI, and broadcast by the defendant TV stations. Through one or more of these channels of communication, the story came to the attention of plaintiff Tumminello, who was then under indictment in New Jersey for a murder committed in 1968.

Upon hearing the story, Tumminello became elated, presumably because a ruling that murder was governed by a five-year limitations period would require dismissal of his indictment.

His elation was short-lived. Much to Tumminello's disappointment, on November 17, 1977, the Supreme Court ruled unanimously in the case of *State v. Zarinsky*, 143 N.J.Super. 35, 362 A.2d 611 that the statute of limitations did *not* apply to the crime of murder. Upon hearing this bad news, Tumminello:

> was rendered despondent and depressed, suffered in his health, both physically and mentally, has been unable to sleep, and unable to assume his normal daily activities. Furthermore, his reputation among the people to whom he communicated the original story was lowered and suffered because of his reliance thereon.

---

* Defendants Record, Soiffer and UPI have moved, under Rule 12(b)(6) for dismissal, or alternatively, under Rule 56, for summary judgment. Defendant AP has moved for judgment on the pleadings under Rule 12(c). Defendants ABC, CBS and NBC have moved "for dismissal of the complaint for failure to state a claim under Rule 12(c)."

Count 1 charges that the Record and Soiffer, by failing to confirm the accuracy of their story, by failing to heed Justice Pashman's request that the story not be published, and by wilfully, maliciously and recklessly reporting the story, damaged plaintiff's health. Tumminello seeks two million dollars in compensatory damages and five million dollars in punitive damages. Count 2 seeks to hold the defendant wire services liable for damages in an unspecified amount. Count 3 charges that defendants WABC, WCBS and WNBC, knowingly and wilfully failed to confirm the story's veracity and failed to comply with the duty of all broadcasters to strive for truth in news reporting. Again, damages in an unspecified amount are sought.

■ Believing that Tumminello might be incarcerated in New Jersey and thus might be viewed as a citizen of New Jersey for diversity purposes, the Court initially and *sua sponte* questioned its jurisdiction. The' Court is, however, satisfied that incarceration in a penal institution will not work a change in domicile and that Tumminello remains a citizen of Florida. See generally 13 Wright & Miller, Federal Practice and Procedure, § 3618, at 749–750. Accordingly, the Court concludes that diversity jurisdiction exists. The Court also concludes (and all parties agree) that New Jersey law applies.

Plaintiff attempts to plead causes of action (1) for intentional infliction of emotional distress and (2) for negligent infliction of emotional distress. The Court will treat these theories in turn.

### (1) *Intentional Infliction of Emotional Distress.*

■ The leading case permitting recovery for extreme intentional misconduct causing emotional distress is *Wilkinson v. Downston*, 2 Q.B.D. 57 [1897] in which a practical joker amused himself by telling a woman that her husband had been smashed up in an accident and was lying at The Elms at Leytonstone with both legs broken, and that she was to go at once in a cab with two pillows to fetch him home.

The fact patterns in cases which have recognized this tort, also known as the tort of outrage, are widely varied. So far as it is possible to generalize, the rule which seems to have emerged is that there is liability only for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, emotional distress of a very serious kind. In cases which bear some resemblance to the facts in the instant case, extreme outrage has been found in decoying a woman suspected of insanity to a hospital by a concocted tale of an injured husband and child, *Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954); and in spreading the false rumor that the plaintiff's son had hanged himself, *Bielitski v. Obadiak*, 61 Dom.L.Rep. 494 (1921). The cases, however, allow recovery only where the mental distress has been inflicted intentionally, either in the sense that the defendant desired to cause it, or that he knew that it was substantially certain to follow from his conduct. See generally Prosser, Handbook on the Law of Torts 55–60.

In no sense can the defendants' publication of the initially erroneous news story be deemed to have been intentionally done in order to harm the plaintiff; Tumminello does not allege otherwise.

Although plaintiff alleges that the conduct complained of was intentional, it was intentional only in the sense that the defendants intended that their story be disseminated. There is no allegation that they intended to hurt this plaintiff or that they intentionally published a story knowing it to be untrue and knowing that it would have a substantial likelihood of harming this plaintiff. On this ground alone, the complaint fails to state a cause of action for intentional infliction of emotional distress.

In addition, a mistake in a news story—a mistake which may not have arisen had the Record or its reporter confirmed their story—is not conduct which can be viewed as exceeding all bounds usually tolerated by decent society. Moreover, while the Court must accept as true plaintiff's allegations

that he suffered physical and emotional harm, and while the Court can easily believe that one in the position of plaintiff would have been initially elated and then substantially disappointed by the story and his later discovery of its error, in order to be compensable, the harm suffered by the plaintiff, except in cases where the defendant has knowledge of the plaintiff's peculiar susceptibility and practices upon it, must be such as a reasonable man "of ordinary sensibilities" would undergo under the circumstances. This is not such a case. See Prosser, *supra; Oehler v. L. Bamberger & Co.*, 103 N.J.L. 703, 137 A. 425 (1927), *aff'g* 4 N.J.Misc. 1003, 135 A. 71 (1926) (stroke at repossession of vacuum cleaner).

### (2) *Negligent Infliction of Emotional Distress.*

■ New Jersey has not gone very far in recognizing the tort of negligent infliction of emotional distress. In *Falzone v. Busch*, 45 N.J. 559, 214 A.2d 12 (1965), the Supreme Court of New Jersey departed from the rule that physical impact was a prerequisite to recovery for injuries from fright. In *Falzone*, plaintiff was sitting in a parked automobile; her husband was standing in a field adjacent to the road. Defendant's car struck the husband and then veered in the direction of the wife coming so close to plaintiff as to put her in fear for her safety. Carving out a narrow exception to the impact rule, the Court held that where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright.

The *Falzone* exception has been read narrowly. Thus, in *Caputzal v. Lindsay Co.*, 48 N.J. 69, 222 A.2d 513 (1966), recovery was not permitted. In that case, the purchaser of a water softener sued its manufacturer and seller for a heart attack which he allegedly suffered after he drew brownish water from his faucet after installation of the softener. The Court adhered literally to *Falzone's* language that the injury must have resulted from a reasonable fear of personal injury in the sense of a reasonably apprehended physical impact. Plaintiff here cannot bring himself within the *Falzone* exception.

It does appear that the New Jersey courts *might* recognize liability for negligent infliction of emotional distress in the most outrageous circumstances despite an absence of physical impact or reasonably apprehended fear of same. Thus, the appellate division, in *Muniz v. United Hospital Medical Center*, 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977), *rev'g* 146 N.J.Super. 512, 370 A.2d 76 (L.Div.1976), reversed the trial court's dismissal of the complaint in a case where the facts were particularly grotesque. The plaintiffs alleged that their newborn premature infant was brought to the defendant hospital; that one day later, the infant's mother received a phone call from an unidentified hospital employee advising that the baby was dead; but that, despite repeated requests by the parents, the hospital could not verify the death nor could it locate the infant's body for three weeks.

Obviously, the case does not support Tumminello's claim. The defendants' conduct here, if wrongful at all, was not so outrageous as to support liability under a theory of negligent infliction of emotional harm. New Jersey would not permit recovery on these facts.

■ The Court notes in passing that New Jersey *could* not, consistent with the requirements of the First Amendment, impose liability for a negligently untruthful news story. See *Time Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). Recovery may be had at best only for knowing or reckless falsehood. But even assuming that the defendants' publication without confirmation constituted recklessness—a doubtful proposition itself—plaintiff may still not recover because, under traditional tort principles, he was not one to whom the defendants owed any particular

duty of care. Accuracy in news reporting is certainly a desideratum, but the chilling effect of imposing a high duty of care on those in the business of news dissemination and making that duty run to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution.

Accordingly, this Court concludes that plaintiff's allegations of negligent infliction of emotional distress do not state a claim. Defendants' motions will be granted.