243 N.J. Super. 464 (1990)
579 A.2d 1275
PAUL SCHLICHTMAN, PLAINTIFF,
v.
NEW JERSEY HIGHWAY AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, OPERATING THE GARDEN STATE PARKWAY, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Essex County.
Decided April 10, 1990.
*466 Paul Schlictman, plaintiff pro se.
Russell Burnside for defendant (Robinson, Wayne & La Sala, attorneys).
FAST, J.S.C.
Who in their common experience has not at one time or another had a merchant say "I'm sorry, but we're out of this item. At this price they sold faster than we expected," and been unable to purchase a product at a discounted sale price? That, in effect, is what happened to plaintiff when he tried to buy the New Jersey Garden State Parkway toll tokens at a discount. Under the facts, I find that plaintiff is without a remedy against defendant.
The New Jersey Highway Authority (hereafter, the "authority"), in April 1989, increased its tolls from 25 cents to 35 cents. In connection therewith and for a limited period, it authorized the sale of tokens at a discount. The authorization was voluntary *467 (i.e., not required by any higher authority) and was reflected in the authority's minutes, approved by the then Governor. The sale was advertised through several media, including signs on the parkway itself. The discounted price was $10 for a roll of 40 tokens, a savings of $4 a roll. Shortly after the discount sale commenced, complaints were made that the tokens were not available. The authority explained that the shortage probably resulted from an unanticipated demand for the tokens resulting from purchasers hoarding them. The authority then began limiting the sales to certain days of the week; but even with that limitation, the demand could not be satisfied.
Plaintiff commenced this action because, on five different occasions (i.e., within the authorized sale dates and times), the authority "failed to sell discount toll tokens" and on one occasion, when plaintiff did buy a roll of toll tokens, there was one "slug" in the roll. Of course, his use of the slug would have been illegal, and therefore, it had no value. This action, therefore, involves claims, essentially in two counts, totalling $20.35, the amount demanded in the complaint.
Plaintiff supported his complaint by stating the dates and times when, and location where, he offerred to buy the rolls at discount. He also claimed that the authority was "required" to sell them at a discount.
Plaintiff's first count is premised on the claim that:
... the Authority is directed by law to construct, operate, and maintain the Garden State Parkway for the convenience and comfort of the users of the highway project. In addition, the contract between a motorist and a toll road operator is established upon a motorist's entry upon a toll road. This contract requires the Authority to charge only a designated toll as established by law....
The second count is premised on the claim that:
... the Authority breached a contractual obligation by tendering 39 tokens and one slug instead of the 40 tokens for which he had paid ... As a toll highway authority is responsible for negligently inflicted wrongs, the defendant is responsible for replacing the slug with a valid Discount Toll Token at no cost to the plaintiff.
*468 According to his brief on that second count, plaintiff seeks the exchange of that slug for the discount toll token "provided that the defendant pays all costs pertaining to this exchange, as well as all costs and fees pertaining to this action." Defendant moved for summary judgment.

Discussion of the First Count.
Defendant's motion is premised on the concept that the first count is an action based on contract principles and that there was no contract between the parties which was breached. Rather, the authority contends, there was an advertisement of the availability of tokens for sale at discount, and that the advertisement was a solicitation for an offer. The position then continues that, since it is a solicitation for an offer (rather than an offer itself), when plaintiff made his offer, defendant-authority was able to, and did here, reject the offer.
Plaintiff's answering brief includes several quotes from the New Jersey Register relating to the toll increase from 25 cents to 35 cents, the benefits of using tokens, the availability for sale, and the position that the Governor having approved the sale of discounted tokens, the authority had to, in effect, meet any demand for the tokens at a discount until the Governor approved otherwise (which did not happen).
Finally, the brief concludes that:
Accordingly, the designated toll at the Essex Toll Plaza on the dates and times in question was 35 cents or an available token, with tokens available at the rate of 40 for $10.00. The plaintiff accepted the defendant's offer to use the Garden State Parkway by entering the toll road, was bound to the contractual obligation to pay the designated toll, and elected to avail himself of the provisions of the contract which enabled him to buy Discount Toll Tokens from a collector at the Essex Toll Plaza. As the Authority refused to sell the Discount Toll Tokens ... and as there was no resolution or other action of the Authority, with the prior approval in writing of the Governor ... the Authority breached the contract established when the plaintiff entered the Garden State Parkway. [Emphasis supplied]
The error in plaintiff's position is that the advertisements did not constitute offers. Rather, plaintiff made an offer in response *469 to the authority's advertisements, but plaintiff's offers were refused by the authority.
This issue was addressed in Mesaros v. United States, 845 F.2d 1576 (Fed. Cir.1988). In that case, prospective purchasers of a certain United States commemorative coin brought suit based on a breach of contract. The court held that advertisements by the governmental agency (the United States Mint) were not offers, but rather were solicitations for offers from potential customers that were subject to acceptance or refusal by the mint. The court said:
The great weight of authority is against the plaintiffs. It is well established that materials such as those mailed to prospective customers by the Mint are no more than advertisements or invitations to deal. They are mere notices and solicitations for offers which create no power of acceptance in the recipient. [citations omitted]
Generally it is considered unreasonable for a person to believe that advertisements and solicitations are offers that bind the advertiser. Otherwise, the advertiser could be bound by an excessive number of contracts requiring delivery of goods far in excess of amounts available. [Id. at 1580-1581]
As noted in Mesaros and as appears here, "Demand for the coins far exceeded the Mint's expectations." Id. at 1578.
Plaintiff's position is not enhanced by the fact that the minutes of the authority were approved by the Governor and were never rescinded nor revised. The minutes authorized the sale of tokens at a discount, and presumably, the advertising reasonably anticipated the effectuation of the sale. That authorization, however, was no more than that, i.e., the authorization to sell the tokens at a discount. The authorization did not create a contract.
The authority is "a body corporate and politic," N.J.S.A. 27:12B-5, and may act within its authorization. That it was given the power "To make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act," N.J.S.A. 27:12B-5(o), does not create any contractual liability that does not otherwise exist in law. As noted above, defendant-authority was not bound to plaintiff by contract.
*470 Likewise, the failure of the authority to meet the unanticipated demand, notwithstanding the advertisement, does not create a cause of action under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. The applicability of that act to the failure of the authority to meet the demand for the subject tokens at the discounted price was the issue decided in Barry v. New Jersey State Highway Auth., ___ N.J. Super. ___ (Ch.Div. 1990).
Although that case considered an additional issue not present here (i.e., a suit by one state agency against another), Judge Gibson found that the sale of the subject toll tokens or the promotion of a discount could not be fairly viewed as the type of sale or "merchandise" which the Legislature would have intended to have been covered by the Consumer Fraud Act. Furthermore, he found that the authority's conduct was neither fraudulent nor deceitful. Likewise, I find no showing nor proffer of any suggestion of fraud or deceit in this case and, therefore, hold that the Consumer Fraud Act is not available to plaintiff.

Discussion of the Second Count.
Plaintiff's theory of liability on the second count, stated at various times to be for the exchange, replacement, or $.35 for the slug, is not consistent. As noted above, in the quote from page two of his brief, it sounds in both breach of contract and negligence. By whatever label it is perceived, I shall dismiss this claim for the reasons hereafter given.
I acknowledge that apparently contradictory principles may be applied to this count, naturally resulting in opposite conclusions. On the one hand, courts have said:
The right to maintain an action for the value of property, however small, of which the owner is wrongfully deprived, is never denied.
That quote is from Wartman v. Swindell, 54 N.J.L. 589, 590, 25 A. 356 (E. & A. 1892), an action at law based on an alleged positive and wrongful invasion of another's property, i.e., an intentional tort.

*471 No matter how small the amount in controversy, it is the function of this court to see that justice is done.
That quote is from Broder Credit & Collection Svc. v. Burton, 193 N.J. Super. 474, 475 A.2d 52 (App.Div. 1984), involving procedural matters on an appeal, rather than the substantive issue.
Concededly, justice is not qualified by the monetary importance or insignificance of the controversial issue.
That quote is from Series Publishers, Inc. v. Greene, 9 N.J. Super. 166, 75 A.2d 549 (App.Div. 1950), where plaintiff counterclaimed for the return of a $100 deposit based upon a timely rescission of an agreement to purchase a series of books where the proofs were that the books did not correspond to the expressed warranties made about them.
Series Publishers, Inc., was quoted for the same principle in Hoddeson v. Koos Bros., 47 N.J. Super. 224, 228, 135 A.2d 702 (App.Div. 1957), relating to the alleged fraud of an apparent salesman.
The principle discussed above would apparently support the continued consideration of plaintiff's claim for 35 cents.
The apparently contradictory principle to which I refer is the ancient doctrine of "De minimis non curat lex," i.e., the law does not care about trifles. Ancient doctrines have survived in legal forums where they make common sense, serve the public at large, and at the same time do not disserve the ends of justice in an individual action.
This ancient doctrine was applied almost 200 years ago in New Jersey in Moffett v. Ayers, 3 N.J.L. 655 (Sup.Ct. 1810) in a one sentence finding: "De minimis non curat lex; it is too small a thing to take notice of. Judgment affirmed."
The maxim was expressed in Swedesborough Church v. Shivers, 16 N.J. Eq. 453 (Ch. 1863) as follows:
The objection that the value of the suit is too trivial to justify the court in taking cognizance of it, though not specifically assigned as a ground of demurrer, may be taken advantage of by special motion to dismiss the bill, or the court may, of its own motion at the hearing, order the bill to be dismissed *472 upon this ground. Mosely's R. 47, 356; Brace v. Taylor, 2 Atk. 253; Cooper's Eq.Pl. 166.

The rule in question is founded in reason and policy. Its design is to prevent expensive and mischievous litigation, which can result in no real benefit to complainant, but which may occasion delay and injury to other suitors. Courts of equity sit to administer justice in matters of substantial interest to the parties, not to gratify their passions, or to foster a spirit of vexatious litigation. If the suit had no other object than the mere recovery of the amount which is the subject of controversy, the bill should be dismissed. But the bill in this case is not filed for the mere recovery of the amount now claimed to be due. It seeks also to establish a right of a permanent and valuable nature, and falls therefore within the recognized exceptions to the rule. Beames' Orders 10, note 33; Story's Eq, Pl., Sec. 500, 501. [at 457, 458; emphasis supplied]
I find that the instant action is for "the mere recovery of the amount which is the subject of the suit"; it does not seek to establish a "right of a permanent and valuable nature." Its insignificance is obvious.
To the same effect as Swedesborough, see Kelaher v. English, 62 N.J. Eq. 674 (Ch. 1901), which notes that the rule is required, where applicable, to "protect the court" and "of more importance, protect defendants against `expensive and mischievous litigation about trifling matters which, in consequence of the insignificance of the amount involved, would do the parties themselves more harm than good.'" Id. at 675 (citing Allen v. Demarest, 14 Stew.Eq. 162).
"The rule is applicable in equity as in law." 1 AmJur2d, Actions, 67 [De minimis non curat lex].
The principle that the law does not care for trifles, as expressed in the legal maxim, De minimis non curat lex, has been applied in actions at law, and has been considered to apply where no damage is implied by law from the wrong, and only trifling or immaterial damage results therefrom. [1A C.J.S., Actions, § 36 at 404, Actions Involving Trivial Matters or Amounts]
I have called the two concepts discussed above as "apparently inconsistent." I say "apparently" because they would lead to different results on this second count. In fact they are consistent, because both concepts serve the ends of justice. "The inquiry in all cases is whether injustice has been done." Pepe v. Urban, 11 N.J. Super. 385, 389, 78 A.2d 406 (App.Div. 1951) (quoting from Ogden v. Gibbons, 5 N.J.L. 612, 626 *473 (Sup.Ct. 1819), deciding the issue as to whether substantial rights of plaintiff had been infringed by the action of the court). In those cases cited first in the discussion of this count, the nature of the wrong was the basis for avoiding the maxim. The doctrine will be applied according to the nature of the wrong, or the injury, rather than the resulting damage. 1A C.J.S. Actions, § 36 (Actions Involving Trivial Matters or Amounts); Fullam v. Stearns, 30 Vt. 443 (1857). In appropriate cases, to meet the ends of justice, the law will even imply nominal damages. This is not one of those cases for there has been no suggestion that the action of the authority was so wrongful as to call for implied, or trivial, damages.
There is also a second "ancient doctrine" that I believe is applicable to this count, to wit, that to permit this action would encourage other similar suits and thereby open the "flood gates" to the courts. This is sometimes spoken of as an "in terrorem" argument. It, as with the maxim De minimis non curat lex, arises from the inherent right of the court to control the matters that will be heard. The right arises from concepts of public policy, justice and fairness.
If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigations in cases where the injury complained of may be easily feigned without detection, and where the damages must rest upon pure conjecture and speculation.... a wide field would be opened for unrighteous or speculative claims. [Ward v. West Jersey & Seashore R.R. Co., 65 N.J.L. 383, 386 [47 A. 561] (Sup.Ct. 1900) (quoting Mitchell v. Rochester Railway Co., 151 N.Y. 107, 45 N.E. 354)]
"A wise public policy requires us to hold such injuries to be non-actionable." Id. at 386, 47 A. 561. Two significant observations must be noted about Ward: 1) it related to a claim for personal injuries, i.e., fright without physical contact, and 2) it was overruled by Falzone v. Busch, 45 N.J. 559, 214 A.2d 12 (1965). When overruling Ward, the Supreme Court noted that "We are not dealing with property law, contract law or other fields where stability and predictability may be crucial." 45 N.J. at 569, 214 A.2d 12. Falzone also required that, "Of course, where fright does not cause substantial bodily injury or *474 sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." Id. at 569, 214 A.2d 12.
The necessary conclusion from Falzone is that the public policy of not opening the flood gates to the court from contract actions, or tort actions of insubstantial damages, still survives. "The fear of an expansion of litigation should not deter courts from granting relief in meritorious cases." Id. at 567, 214 A.2d 12 (cited in Ekalo v. Construction Serv. Corp. of America, 46 N.J. 82, 94, 215 A.2d 1 (1965)); emphasis supplied. "While we recognize fully that court congestion may work a substantial prejudice to litigants, we would never exclude from our courts persons having just causes of action on this basis." Darrow v. Hanover Township, 58 N.J. 410, 414, 278 A.2d 200 (1971) (relating to interspousal immunity in a tort action).
I find that the claim for 35 cents or the replacement of the slug is not meritorious but is vexatious and harrassing. Defendant would have to yield to plaintiff's claim (and I suspect an unending number of other plaintiffs who may allege the receipt of one or more slugs) or defendant would have to go through the time, effort and expense of defending such an action, presumably with an attorney. I consider this to be vexatious and harrassing because plaintiff has failed to allege any active wrongdoing on the part of defendant. The loss that plaintiff will have to bear as a result of the dismissal of this count is one of any number of trifling inconveniences that we all commonly encounter in our daily lives.
The doctrine of "in terrorem" has been primarily applied to expanding fields of torts, or "innovations in the law" permitting recovery where no right had previously existed. King v. So. Jersey Nat. Bank, 66 N.J. 161, 330 A.2d 1 (1974). However, because it is a matter of public policy, and therefore a flexible doctrine, and because it springs from the inherent powers of the court, I find that its logic applies to this second count as well. Therefore, even were a recognized cause of action to *475 have been found, I would have dismissed the claim for 35 cents. It is "too lacking in seriousness" to be considered by the court. Falzone v. Busch, supra, 45 N.J. at 560, 214 A.2d 12.

Conclusion
For the reasons stated above, defendant's motion for summary judgment is granted and both counts of the complaint are dismissed. I should note also that the statewide shortage of tokens for sale at discount has spawned at least three other suits that have been brought to my attention. Therefore, although there is sufficient legal reason to dismiss the first count for the reasons stated in the discussion thereon, the public policy reasons stated in the second count may have been applicable to the first count as well.

Postscript
As noted on page 468, 579 A.2d page 1277 of this opinion, plaintiff also wants defendant to "pay all costs and fees pertaining to this action." "Except as otherwise provided by law, costs may be allowed or disallowed in the discretion of the court to any party in any action...." N.J.S.A. 2A:15-59. Costs are hereby disallowed to both parties. The disallowance is based on the dismissal of the second count as a matter of public policy, something that is flexible in concept and not necessarily predeterminable by plaintiff when he brought this action. Likewise, I find no basis for the allowance of fees to either party, certainly not to plaintiff who appeared pro se, nor to defendant. R. 4:42-9(a).