274 N.J. Super. 532 (1994)
644 A.2d 691
CHRISTOPHER W. UNGER, SR., PLAINTIFF,
v.
PEGGY ANN UNGER, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Burlington County.
March 29, 1994.
*533 James T. Rosenberg for plaintiff (Kent, Grayer & Rosenberg, attorneys).
John T. Discepolo for defendant (Law Office of James Logan, Jr., attorneys).
BOOKBINDER, J.S.C.
This case concerns the effect of environmental tobacco smoke (hereinafter ETS) as it pertains to child custody.
Christopher W. Unger, Sr. and Peggy Ann Unger were married in 1982. Mrs. Unger smoked cigarettes throughout the marriage, while Mr. Unger did not smoke during the marriage. Two children were born of the marriage. C.W. was born on September 16, 1982 and B.B. was born on April 27, 1988.
On July 10, 1992 Mr. Unger filed for divorce while residing with Mrs. Unger. In his complaint, Mr. Unger asked for custody of the children. Mrs. Unger counterclaimed also asking for custody of the children.
Pursuant to R. 5:3-3 the family was referred to Jane F. Rittmayer Ed.D., a psychologist, for an evaluation to aid the Court in its determination of custody. Dr. Rittmayer's report dated December 29, 1992, recommended joint custody, with Mrs. Unger as the primary residential parent. Her report referred to the high intensity stress caused by the family living together. The doctor found that Mrs. Unger smokes excessively, noting that Mrs. Unger said she smokes one and one half packs of cigarettes daily. She further stated that while there was no external evidence of parental addictive behavior which would interfere with the development of the children, both parents did demonstrate addictive tendencies. It is unclear whether Dr. Rittmayer explicitly considered ETS as a factor in her recommendation. Of *534 particular import is the fact that the report made no mention of any coughing by C.W.
Mr. Unger obtained an evaluation of the family by Ronald S. Gruen, Ed.D., a clinical psychologist. Dr. Gruen's report dated March 28, 1993, also recommended joint custody, with Mrs. Unger as the primary residential parent. He noted that Mrs. Unger did not show defensiveness when confronted by allegations of excessive smoking. He found Mrs. Unger was disarming in her admission that she smoked fairly heavily. Dr. Gruen did not consider "passive smoking" to be a critical factor in his recommendation because the children seemed to be maintaining good health despite Mrs. Unger's smoking.
In preparation for a final custody trial, Mr. Unger had the children examined by John Slade, M.D., an Associate Professor of Clinical Medicine at the University of Medicine and Dentistry of New Jersey. For approximately seven years, his interest has been the issues of addiction problems, especially alcohol and tobacco. Dr. Slade reported on March 26, 1993 that his examination of C.W. revealed a chronic, persistent, productive cough which suggests a chronic bronchitis. He stated to a reasonable degree of medical certainty that tobacco smoke had contributed to this problem.
On the date of the custody trial it was reported that the custody case was settled. On May 10, 1993 an 18 paragraph custody consent order was signed to finally resolve the matter of child custody. This consent order provided for joint legal custody with Mrs. Unger as the primary residential custodial parent. Paragraph 15 of the consent order provides as follows:
Both parties are restrained from allowing smoking of tobacco in the presence of the children at any location and any enclosed areas such as homes or automobiles and to prevent the effect of secondary inhalation of tobacco smoke. The wife shall designate her bedroom as the only area where she will smoke or anyone else will smoke if the children are present in her home. The wife shall be permitted to smoke in the living area if the children are not present with the understanding that she will purchase, at her own expense, an air purifier which shall be a sufficient air purifier which shall be operated at all times when she is smoking in such area.
*535 The consent order did not address child support. Mrs. Unger immediately filed a motion requesting child support. Mr. Unger filed a cross motion asking, in part, that Mrs. Unger be required to pay a portion of the mortgage on the marital home. Mrs. Unger filed an amended motion concerning summer visitation and various economic issues. Mr. Unger then filed an amended cross motion requesting that the court reopen the custody issue due to a serious lack of supervision by Mrs. Unger and substantial deficiencies in the quality of her supervision.
In his final pleading of August 23, 1993, Mr. Unger stated in pertinent part:
I have noticed that my son, C.W., who has a deep chesty cough everyday, is especially afflicted when he is with his mother, who smokes one and one-half packs of cigarettes per day, and that it decreases when he resides with me in a smoke free environment .. . Based on the risks to my son's health, I ask that my sons be provided with a totally smoke free environment.
Attached to the pleadings was a letter from Dr. Slade who had re-examined C.W. on August 19, 1993. In the letter, Dr. Slade stated that C.W. continued to report a productive cough when he was in his mother's home. The letter further stated that air cleaners do not eliminate ETS and tobacco smoke from one room inevitably contaminates the whole dwelling.
At the August 27, 1993 hearing on the motion, amended motion, cross motion and amended cross motion the court ordered a plenary hearing to determine the effect of ETS on the custody issue. The application to reopen custody by Mr. Unger was held pending the plenary hearing on ETS. Mrs. Unger applied to modify the consent order to remove restraints prohibiting smoking of tobacco in the presence of the children. Pending this plenary hearing, the restraints in the consent order were expanded to preclude Mrs. Unger from smoking in her home or vehicle.
At the plenary hearing on ETS, Dr. Slade testified on behalf of Mr. Unger. He relied upon a report issued by the United States Environmental Protection Agency (hereinafter E.P.A.) in December, 1992. This report, Respiratory Health Effects of Passive Smoking: Lung Cancer and Other Disorders, states:

*536 Based on the weight of the available scientific evidence, the U.S. Environmental Protection Agency (EPA) has concluded that the widespread exposure to environmental tobacco smoke (ETS) in the United States presents a serious and substantial public health impact.
....
In children
ETS exposure is causally associated with an increased risk of lower respiratory tract infections (LRIs) such as bronchitis and pneumonia ...
ETS exposure is causally associated with increased prevalence of fluid in the middle ear, symptoms of upper respiratory tract irritation, and a small but significant reduction in lung function ...
In addition, after reviewing the children's medical records, Dr. Slade found that C.W. had 27 visits to doctors dealing with respiratory problems. He found that B.B. had 38 visits to doctors for respiratory complaints. He concluded that ETS was a factor in the health problems of both children.
Dr. Slade further testified that ventilating systems, such as the purifier Mrs. Unger had in place, do not completely eliminate the dangers of ETS. In response to a question regarding the presence of smoke in an automobile, he stated that smoke dissipates within eight to ten hours in an ordinarily ventilated area. He testified that there was not enough data to quantify the extent of particles emanating from surfaces after that period of time. He recommended that the home and car be smoke-free at all times.
Gerald Fendrick, M.D., Clinical Professor at Thomas Jefferson University Hospital, Philadelphia, Pa., and the children's treating pediatrician since birth, testified on behalf of Mrs. Unger. Dr. Fendrick stated that he believes both of the children are healthy. He believed that the children had fewer medical visits than those computed by Dr. Slade. Dr. Fendrick explained that C.W. told him that he had a morning cough that was not present after the summer. In addition, Dr. Fendrick stated that C.W. denied shortness of breath with exercise. Although Dr. Fendrick could not state that the children's health would be any different had they not been exposed to tobacco smoke, he stated he prefers that no children be exposed to this smoke.
*537 Mrs. Unger testified that she reduced her smoking to one pack of cigarettes per day. She explained that at her place of employment, her smoking is limited to a restricted area. She stated that in the interim between the consent order of May 10, 1993 and the August 27, 1993 order, she smoked between six and ten cigarettes per day in her home. After the prohibition of smoking, she smoked approximately ten cigarettes in the house during a six month period.
Mr. Unger testified that Mrs. Unger's father and two of Mr. Unger's maternal uncles died of lung cancer. Also, Mr. Unger's mother, two grandparents, two aunts, two uncles, and two first cousins died of various other types of cancer. Mr. Unger also testified that on one occasion, while the order prohibiting smoking was in effect, he smelled smoke in Mrs. Unger's residence. He did not deny that he allowed the children to be in the presence of tobacco smoke on occasion.
The court conducted an interview with C.W. During the interview, C.W. stated that he has a cough every morning. He stated that he is a basketball and soccer player. He said that he has trouble breathing as he runs up and down the basketball court and while playing soccer.
The Legislature set forth the framework for deciding child custody in N.J.S.A. 9:2-1-21. The touchstone for the court's decision is the best interests of the child. Matter of Baby M, 109 N.J. 396, 453, 537 A.2d 1227 (1988). A list of factors to be considered in its analysis is provided for the court in N.J.S.A. 9:2-4(c). The Legislature stated that the court is not limited to these factors. N.J.S.A. 9:2-4(c).
One of the factors to be considered is the safety of the child. N.J.S.A. 9:2-4(c). Health of the child has also been held to be a relevant consideration. Matflerd v. Matflerd, 10 N.J. Super. 132, 136, 76 A.2d 722 (App.Div. 1950), certif. den., 6 N.J. 398, 78 A.2d 824 (1951). In addition, the court will also look at the habits of the parent. Clemens v. Clemens, 20 N.J. Super. 383, 392, 90 A.2d 72 *538 (App.Div. 1952). The Supreme Court of New Jersey has held that "the custody decision must be based on all circumstances, on everything that actually has occurred, on everything that is relevant to the child's best interests." Baby M, 109 N.J. at 456, 537 A.2d 1227.
Nearly two decades ago, the health impact of ETS was considered by a New Jersey court in Shimp v. N.J. Bell Telephone Co., 145 N.J. Super. 516, 368 A.2d 408 (Ch.Div. 1976). The court in Shimp found that, "[T]he evidence is clear and overwhelming. Cigarette smoke contaminates and pollutes the air, creating a health hazard not merely to the smoker but to all those around her who must rely upon the same air supply". Id. at 530, 368 A.2d 408.
More recently, the Legislature has found and declared tobacco smoke is "... a substantial health hazard to a small[er] segment of the nonsmoking public." N.J.S.A. 26:3D-38; N.J.S.A. 26:3D-46; N.J.S.A. 26:3E-7. The opinion of the court in Shimp and the finding of the Legislature have been additionally substantiated by the aforementioned EPA report.
Clearly, the effect of ETS is a factor that may be considered by a court in its custody determination as it affects the safety and health of the children. Similarly, the fact that a parent smokes cigarettes is a permissible parental habit to consider when determining what is in the best interests of the children because it may affect their health and safety.
These principles are most strong in this matter due to the physical condition of C.W. This court finds that C.W. has a daily cough, an occasional productive cough and occasional shortness of breath. The court has considered Mrs. Unger's position that the children are healthy based on Dr. Fendrick's testimony. The court does not disagree with Dr. Fendrick's analysis of C.W.'s health based upon the facts presented to him by the child. However, C.W. related a different factual background to the court, Dr. Slade and Dr. Fendrick. Dr. Fendrick did not have the *539 benefit of C.W.'s complaint of a daily cough, nor did Dr. Fendrick have the benefit of C.W.'s complaint of shortness of breath.
This matter is referred to Dr. Rittmayer for reevaluation. This decision to reopen the question of custody is based upon several grounds. Dr. Rittmayer was not previously presented with the information regarding C.W.'s daily cough or his shortness of breath. She made her evaluation fifteen months ago. At that time, the children were living with both parents in a tension filled situation. Formerly she had no ability to analyze the care afforded the children by Mrs. Unger as a sole caretaker or Mr. Unger's more recent allegations regarding serious deficiencies therein. Dr. Rittmayer did not consider ETS explicitly.
Dr. Rittmayer's recommendation concerning custody should consider the effect of ETS in conjunction with all of the factors listed N.J.S.A. 9:2-4. She may, of course, consider any facts she feels are important in her professional opinion. For example, these facts may include review of a clearer medical evaluation as to the diagnosis and prognosis of C.W.'s daily cough and shortness of breath by Dr. Fendrick or another physician or any attempts by Mrs. Unger to mitigate the impact of ETS, by mechanical or other means.
Needless to say, ETS must not be the sole factor in Dr. Rittmayer's evaluation. She should weigh ETS as a health and safety factor as she would weigh any other health and safety factor. In addition, she should consider the practical implications of this order on the custody arrangement. A clear assessment of the impact of ETS on C.W.'s health must be balanced with the other factors provided by the Legislature. Only by a complete evaluation of all the facts and factors will Dr. Rittmayer be able to make a proper recommendation.
After the parties receive Dr. Rittmayer's report, either party will be able to challenge it with their own psychological report. If no agreement is reached by the parties concerning custody based on the psychological reports, this matter will be scheduled for a final custody trial. At that time, the court will make its decision *540 based upon the factors provided by the Legislature, including but not limited to the effect of ETS on the children's health, the effectiveness and practicality of the limitations on smoking, Mr. Unger's allegations concerning Mrs. Unger's supervision, Dr. Rittmayer's recommendation and any other relevant information presented by the parties.
Pending the custody trial, the consent order naming Mrs. Unger as the primary residential custodial parent will remain in effect. This arrangement is based on both the prior agreement of the parties and the prior recommendations of the two psychologists. There has been no showing at this time to overturn the custody status.
The terms and conditions of the custody status must be addressed, however. The Legislature has found and declared that "the resolution of the conflict between the right of the smoker to smoke and the right of nonsmokers to breathe clean air involves a determination of when and where rather than whether a smoker may legally smoke." N.J.S.A. 26:3D-38; N.J.S.A. 26:3D-46; N.J.S.A. 26:3E-7. Further, the court in Shimp stated that "the right of an individual to risk his or her own health does not include the right to jeopardize the health of those who must remain around him or her ..." Shimp, 145 N.J. Super. at 530, 368 A.2d 408.
The finding of the Legislature and the court in Shimp are further supported in the context of determination of child custody. While no court in New Jersey has found that the right to smoke has risen to the level of a constitutionally protected right, even a parent's constitutionally protected right may be restricted upon a showing that the parent's activity may tend to impair the physical health of the child. In re J.S. & C., 129 N.J. Super. 486, 489, 324 A.2d 90 (Ch.Div. 1974), aff'd, 142 N.J. Super. 499, 362 A.2d 54 (App.Div. 1976).
As the parties previously agreed, they will both be restrained from permitting smoking in the presence of the children. Both parties have been able to substantially comply with this provision. *541 Neither party has burdened the court with allegations of noncompliance with this aspect of the consent order. While complete compliance may be difficult, the court will not overturn the parties' agreement at this time because there has been no evidence presented that this provision has a negative impact on the best interests of the children.
The plenary hearing has shown the need for a modification of the consent order. Based upon Dr. Slade's uncontroverted testimony regarding the inconclusive effect of Mrs. Unger's air purifier on ETS, the permission formerly afforded to Mrs. Unger under the consent order to smoke in the home in the presence of the children is suspended. Pending a final resolution of the custody matter, Mrs. Unger may smoke in her home or vehicle when the children are not present. Mrs. Unger must ensure that there is no ETS in her home or her vehicle for a period of ten hours before the children are present. This ten hour buffer is based upon Dr. Slade's testimony that smoke dissipates within ten hours in an ordinarily ventilated area. The complete ban previously ordered by the court cannot remain because there was insufficient testimony as to its necessity. A buffer is necessary because there was no testimony contradicting Dr. Slade's opinion concerning the time required for smoke to dissipate.
In addition, this modification is required at this time because Mrs. Unger's activity of smoking cigarettes may tend to impair the physical health of the children. Dr. Slade presented uncontroverted testimony indicating that at least some of the health problems of the children were caused by ETS. The best interests of the children in this matter dictate that there be no smoking in their home or vehicle when the children are present and that any smoking in the family home or vehicle be ceased at least ten hours before the children are present.
Mrs. Unger argues that a prohibition of her smoking is unreasonable because of the addictive nature of cigarette smoking. This court is not prohibiting her from smoking; it is merely limiting when and where she may smoke as contemplated by the *542 Legislature. Mrs. Unger has already demonstrated success both at her place of employment and through substantial compliance with the consent order and with the prior order of this court.
Mrs. Unger further argues that this consideration of ETS may lead to a floodgate of litigation that the court is not equipped to handle. The Supreme Court of New Jersey has held that "... the fear of an expansion of litigation should not deter courts from granting relief in meritorious cases ..." Falzone v. Busch, 45 N.J. 559, 567, 214 A.2d 12 (1965).
Obviously, the enforceability of this order will rest substantially on the good faith of Mrs. Unger. Mrs. Unger was candid with the court about occasional violation of its order in the past. She impressed Dr. Gruen with her candor in this matter. In addition to her good faith, a similar relationship with Mr. Unger allowed him to detect past violations by virtue of his consensual entry into her home. Sanctions for violations of this order shall be considered at the time of a violation, if any. Evidence of Mrs. Unger's lack of candor about violations will be considered when such change is shown, if ever. This interim order will be completely reviewed at the time of the final custody hearing.
This court will retain jurisdiction in order to receive Dr. Rittmayer's recommendation, to enforce this Order and to hold a final custody hearing.