

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# Fletcher Harlee Corp v. Pote Concrete

Precedential or Non-Precedential: Precedential

Docket No. 06-2199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Fletcher Harlee Corp v. Pote Concrete" (2007). *2007 Decisions*. Paper 1171.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1171

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2199

FLETCHER-HARLEE CORP.,

Appellant

v.

POTE CONCRETE CONTRACTORS, INC.

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 05-cv-02589)
District Judge: Honorable Jerome B. Simandle

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>
POLLAK,[*] <u>District Judge</u>

_____

[*]Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

(Opinion filed: April 5, 2007)

John A. Greenhall, Esquire
Cohen, Seglias, Pallas, Greenhall & Furman, P.C.
30 South 17th Street, 19th Floor
Philadelphia, PA   19103

      Counsel for Appellant

Thomas A. Clark, Esquire
Karen M. Murray, Esquire
Cureton Caplan
3000 Midlantic Drive, Suite 200
Mount Laurel, NJ   08054

      Counsel for Appellee

—————————

OPINION OF THE COURT

—————————

AMBRO, Circuit Judge

This is a cautionary tale of offer, acceptance, commercial practice, and how to amend a complaint. In the construction industry, general contractors compete for work by submitting bids detailing how they will complete the project, the materials they will use, the time it will take, and the price they will charge. To prepare these bids, general contractors in

2

turn solicit bids from more specialized subcontractors. It is well understood in the industry that bids at both levels are "firm offers;"[1] in other words, subcontractors submit bids expecting to be held to their terms if selected. General contractors rely on subcontractors' bids to create a single-priced package of work. A subcontractor's subsequent refusal to honor its bid wreaks havoc on the general contractor's bid—and can quickly turn a profitable project into a financial "black hole."

Since the advent of legal realism, building the law around commercial practice has been a goal of common law courts. It stems from principles of judicial restraint: judges recognize that the repeat players in an industry often are more capable of setting the industry's ground rules than they are. Thus, we use relevant commercial practice to aid us in interpreting contracts. *See* Restatement (Second) of Contracts § 202 (1981).

As this case demonstrates, however, there is a contract-law principle more powerful than commercial practice: we interpret documents in accord with their plain language. *Id.* at § 203(b) ("[E]xpress terms are given greater weight than . . . usage of trade."). When the text of a subcontractor's bid, which

---

[1] *See* Restatement (Second) of Contracts § 87(1)(a) & cmt. a (1981) (defining the common law requirements of a firm offer); *see also* U.C.C. § 2-205 (defining the requirements for a firm offer in the sale of goods).

would typically be a firm offer, specifically states that it is not one, we must follow that text. Therefore, we cannot allow a general contractor who purports to accept such a bid to sue for breach of contract or for promissory estoppel.

I.

Fletcher-Harlee Corp., a general contractor, solicited bids from subcontractors on various aspects of a building project for which it intended to compete. In keeping with industry custom, Fletcher-Harlee's solicitation letter stipulated that bids must be held open for a minimum of 60 days and that subcontractors must agree to be accountable for the prices and proposals submitted. In response, Pote Concrete Contractors, Inc. submitted a written price quotation for providing the concrete for the project. Pote's "bid," however, did not conform to Fletcher-Harlee's terms; rather, it stipulated that its price quotation was for informational purposes only, did not constitute a "firm offer," and should not be relied on. Pote's response further stated that Pote did not agree to be held liable for any of the terms it submitted.

The terms that Pote submitted were the most favorable, and, for reasons not apparent from the record, Fletcher-Harlee relied on them in preparing its general bid despite Pote's stated

4

limitations.[2]  Pote was quite serious about those limitations, and, when Fletcher-Harlee won the bid and tried to reduce Pote's terms to a written contract, it raised the price.  This increase pushed Pote's bid above the next lowest one, and so Fletcher-Harlee ended up using a different concrete subcontractor and spending over $200,000 more than expected.

Fletcher-Harlee sued Pote in District Court[3] for breach of contract and promissory estoppel.  Determining that the facts pled did not support either theory of liability, the District Court granted Pote's motion, and Fletcher-Harlee now appeals to us.  Besides its arguments on the merits, it now claims that the District Court *sua sponte* should have extended it the opportunity to amend its complaint.  For the reasons that follow, we affirm.[4]

---

[2] The disclaimer language was in normal print in the last paragraph of Pote's one-page submission letter. Fletcher-Harlee does not argue that it was worded or presented in a deceptive manner.

[3] The District Court's jurisdiction was based on diversity of citizenship and an amount in controversy above $75,000.  28 U.S.C. § 1332.

[4] We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over dismissals for failure to state a claim, and we affirm only when the facts pled in the complaint are insufficient to support liability. *Children's Seashore House v.*

II.

As any first-year law student knows, an offer and its acceptance are required to form a contract, and so we must decide how to characterize each of the communications between the parties.

Fletcher-Harlee solicited a bid from Pote. In its solicitation letter, Fletcher-Harlee stipulated that bids should be held open for 60 days and that the subcontractor would be held liable for the terms of the bid. Was this letter an offer? Probably not. The document itself is not in the record, but we suspect that it was merely a request to submit an offer. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). Here, a subcontractor would understand that submitting a bid would not "conclude" the matter; rather, the general contractor would have to accept the bid to do so. The Restatement and New Jersey caselaw[5] characterize solicitations like this one not as offers, but as invitations to make offers. Restatement (Second) of Contracts § 26 cmt. d (1981); *see also M.A. Stephen Const. Co., Inc. v. Borough of Rumson*, 308 A.2d 380, 383 (N.J. Super. Ct.

_____

*Waldman*, 197 F.3d 654, 658 (3d Cir. 1999).

[5] The parties agree that New Jersey law governs this case.

6

App. Div. 1973); *cf. Schlitchman v. N.J. Highway Auth.*, 579 A.2d 1275, 1277–78 (N.J. Super. Ct. L. Div. 1991).

Second, Pote submitted to Fletcher-Harlee the terms on which it could complete the work. Was this an acceptance? Obviously not. Even if the Fletcher-Harlee communication were an offer, Pote's response could be no more than a counteroffer because its terms were materially different from those in the solicitation letter. *Mortin v. 4 Orchard Lane Trust*, 849 A.2d 164, 170–71 (N.J. 2004); Restatement (Second) of Contracts § 59 (1981) ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer."). More importantly, because the submission expressly disclaimed Pote's intention to be bound, it could not be an offer. As quoted above, an offer is made when the offeree is justified in thinking that "his assent . . . will conclude" the deal. Restatement (Second) of Contracts § 24 (1981). Here, the very terms of Pote's letter state that Fletcher-Harlee's assent would not.

No offer and no acceptance mean no contract. The District Court properly dismissed Fletcher-Harlee's breach of contract claim.

III.

Fletcher-Harlee also alleges that Pote is liable for altering

7

its bid on a promissory estoppel theory. A key element of promissory estoppel, however, is reasonable reliance, *Pane v. RCA Corp.*, 868 F.2d 631, 638 (3d Cir. 1989), and here Fletcher-Harlee has alleged nothing that would render its reliance on Pote's submission reasonable. While New Jersey courts often use industry practice to determine what is reasonable, *cf. SASCO 1997 NI, LLC v. Zudkewich*, 767 A.2d 469, 478 (N.J. 2001), that alone cannot justify relying on a submission that specifically directs the recipient not to rely on it. Without alleging any facts to undercut the force of Pote's disclaimer, we must conclude that any reliance on the terms of Pote's submission was unreasonable as a matter of law. *See Sovereign Bank v. BJ's Wholesale Club*, 427 F. Supp. 2d 526, 535 (M.D. Pa. 2006).

IV.

In the alternative, Fletcher-Harlee argues that it should be allowed to amend its complaint to correct any deficiency. Before the District Court, it did not request leave to amend; rather, it opposed Pote's motion to dismiss on the merits. Fletcher-Harlee now argues that it was reversible error for the District Court not to offer this unrequested relief *sua sponte*.

Our precedent supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.

8

This "amendment rule" emerged in reaction to our requirement that civil rights cases be pled with heightened particularity, thus giving rise to pleading errors in otherwise colorable cases—particularly those with *pro se* plaintiffs. *See Darr v. Wolfe*, 767 F.2d 79, 80–81 (3d Cir. 1985); *Kauffman v. Moss*, 420 F.2d 1270, 1276 (3d Cir. 1970). Thus, in *Darr* and *Kauffman*, we required that district courts exercise their discretion to allow *pro se* plaintiffs to amend their claims to avoid dismissal. *Darr*, 767 F.2d at 80–81; *Kauffman*, 420 F.2d at 1276.

In *District Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986), we used a footnote from *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976) (*per curiam*), and our decision in *Darr*, to create a rule that district courts in civil rights cases must extend the plaintiff an opportunity to amend—irrespective of whether it was requested and irrespective of whether the plaintiff was counseled—before dismissing a complaint. *Bradley*, 795 F.2d at 316 (citing *Borelli*, 532 F.2d at 951 n.1; *Darr*, 767 F.2d at 81). In the *Borelli* footnote, we had "suggest[ed]" that district courts expressly give plaintiffs leave to amend when dismissing their complaints "without prejudice." *Id.* at 951 & n.1. *Borelli*'s holding did not reach a district court's discretion to dismiss a case with prejudice when a plaintiff fails to request leave to amend. Then-Chief Judge Aldisert dissented from the opinion in *Bradley*, arguing that a district court should not be faulted for failing to grant relief that the plaintiff did not request. 795 F.2d at 321–22. In any event,

9

the *Bradley* Court, invoking *Darr*, appeared to limit its holding to civil rights cases. *Id.* at 316.

In 1993, the Supreme Court struck down the heightened pleading requirement for civil rights cases. *See Leatherman v. Tarrant County Narcotics Intelligence & Communication Unit*, 507 U.S. 163, 168 (1993) ("We think that it is impossible to square the 'heightened pleading standard' . . . with the liberal system of 'notice pleading' set up by the Federal Rules [of Civil Procedure]."); *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998) (recognizing that *Leatherman* mandates the acceptance of a § 1983 civil rights complaint that meets the standards for notice pleading). Despite the demise of the heightened pleading requirement, we have continued to apply the amendment rule in civil rights cases, citing *Borelli* for the proposition that leave to amend must be granted *sua sponte* before dismissing these complaints. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) ("The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought. Circuit case law, however, holds that leave to amend must be given in this situation as well.") (citing *Borelli*, 532 F.2d at 951 n.1).

Standing in tension with the long-standing amendment rule is our longer-standing rule that, to request leave to amend a complaint, the plaintiff must submit a draft amended

10

complaint to the court so that it can determine whether amendment would be futile. Indeed, we have held that a failure to submit a draft amended complaint is fatal to a request for leave to amend. *Ranke v. Sanofi-Sythelabo, Inc.*, 436 F.3d 197, 206 (3d Cir. 2006); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002); *Lake v. Arnold*, 232 F.3d 260, 274 (3d Cir. 2000); *Kelly v. Del. River Joint Comm'n*, 187 F.2d 93, 95 (3d Cir. 1951). In *Ranke*, *Ramsgate*, and *Lake*, we affirmed dismissals for failure to state a claim *and* denials of leave to amend because the plaintiffs had not submitted their proposed amendments. Doing so, we implicitly rejected any argument that, outside of civil rights cases, district courts must *sua sponte* grant leave to amend before dismissing a complaint for failure to state a claim. Thus, we held that a district court need not worry about amendment when the plaintiff does not properly request it.

In *Kelly* we set out how district courts should deal with motions to dismiss filed in lieu of answers in ordinary civil litigation. We held that a motion to dismiss is not a responsive pleading and that Rule 15(a), therefore, allows one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and enters final judgment. *Kelly*, 187 F.2d at 95. After judgment dismissing the complaint is entered, a party may seek to amend the complaint (and thereby disturb the judgment) only through Federal Rules of Civil Procedure 59(e) and 60(b). *Id.* This holding comports with the text of the Federal Rules, and it has not been superseded or

11

overturned in the over half-century since it was issued.

We have rarely applied the *sua sponte* amendment rule outside of the context of a civil rights case, and we will not do so here.[6]   In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.  Here, Fletcher-Harlee has not done that, and its failure to do so is fatal to its request.  Perhaps more fundamentally, absent exceptional circumstances, issues not raised before the district court are waived on appeal.  *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes waiver of the argument.").  Here, Fletcher-Harlee did not ask the District Court for leave to amend its complaint, and so it can hardly fault the Court for not granting relief it never requested.  If Fletcher-Harlee had knowledge of facts that would cure the defects in its complaint, it should have asserted them before now.[7]

_____

[6] Our "alternative" holding in *In re Westinghouse Sec. Litg.*, 90 F.3d 696, 718 n.25 (3d Cir. 1996), that the District Court should have granted leave to amend is ambiguous because it was unnecessary to the main holding (that the complaint was sufficient on its face) and because it is unclear whether the plaintiff requested leave.

[7] Even on appeal Fletcher-Harlee is vague about what facts it might allege that would allow it to state a claim.  It references

In sum, we hold that in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint. This holding does not impose any undue burden on civil plaintiffs, nor does it risk plaintiffs suffering final judgment on the basis of a technical pleading defect. Here, Flecther-Harlee was not caught unaware by the Court's entry of judgment, as it had notice of Pote's motion and every opportunity to amend its complaint beforehand. In any event, after final judgment was entered against Fletcher-Harlee, Rule 59(e) gave it a ten-day window in which to seek to reopen the judgment and amend the complaint.[8] Under our Court's precedent, leave to amend within this window should, as Federal Rule of Civil Procedure 15(a) puts it, "be freely given when justice so requires." Federal R. Civ. P. 15(a); *see Adams v. Gould, Inc.*, 739 F.2d 858, 868–69 (3d Cir. 1994) (reversing denial of motion for leave to amend after summary judgment entered in defendant's

"allegations concerning meetings between Pote and Fletcher-Harlee that took place after Pote placed its bid [that led] Fletcher-Harlee to believe that Pote's bid was valid" without elaborating on the content of those meetings. Appellant's Br. at 16.

[8] Rule 59 motions have the added benefit of tolling the 30-day window for filing a notice of appeal. *See CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 576 n.1. (3d Cir. 1991); *see also* Fed. R. App. P. 4(a)(4)(A)(v).

favor) (citing *Dussouy v. Gulf Coast Inv. Co.*, 660 F.2d 594, 597–98 & n.1 (5th Cir. 1981)).  Barring that, Rule 60(b) gave it a year in which to move to reopen judgment and amend the complaint for good cause.  Having done none of those things, Fletcher-Harlee can hardly complain about the entry of final judgment.

## V.

While Pote may have exhausted any goodwill it had by bucking industry custom, the language of the disclaimer is so plain that we have no choice but to enforce it.  Moreover, because Fletcher-Harlee never properly requested that the District Court allow it to amend its complaint, the Court did not err in dismissing the case with prejudice, as it had no duty here even to consider allowing a right to amend.  We thus affirm the District Court's dismissal of Fletcher-Harlee's complaint.