NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2153
_____

JAMES COTTER; WILSON LAND REALTY, LLC,

Appellant

v.

NEWARK HOUSING AUTHORITY
_____

On Appeal from the United States District Court
For the District of New Jersey
(Civ. No. 09-cv-02347)
District Judge:  Honorable Joseph A. Greenaway, Jr.
_____

Submitted under Third Circuit L.A.R. 34.1(a)
January 24, 2011

BEFORE:  FUENTES, CHAGARES, Circuit Judges, and POLLAK, District Judge[*]

(Opinion Filed: April 6, 2011)
_____

OPINION OF THE COURT
_____

---

[*] Honorable Louis H. Pollak, Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

FUENTES, Circuit Judge.

James Cotter and his company, Wilson Land Realty, LLC, filed suit in District Court alleging that the Newark Housing Authority ("NHA") is liable for breach of contract, specific performance, promissory estoppel and equitable estoppel. The District Court granted NHA's motion to dismiss on the grounds that (1) the allegations did not show the existence of a valid contract; (2) specific performance is a remedy, not a claim; (3) there was no allegation of the clear or definite promise necessary to successfully plead promissory estoppel; and (4) there was no misrepresentation that would bestow contract rights under a theory of equitable estoppel. Cotter and his company appeal each of these rulings. For the reasons set forth below, we will affirm the District Court's order.

I.

We write exclusively for the parties and therefore recount only the facts necessary to reach our decision.

In a 2001 settlement between Cotter and his former business partner, Cotter received a right of first refusal over 30 acres of land owned by NHA in Newark, New Jersey. In a January 2001 letter, NHA asked Cotter to submit an offer for 22 of those 30 acres. That same letter sketched the outlines of a possible agreement: Cotter would have to give up his right of first refusal over the other 8 acres, which were then being used to store demolition materials, and he would have to commit to constructing a building on the property.

After an appraisal of the property, NHA sent Cotter a letter on March 15, 2001, in which it stated that it was willing to sell him the 22 acres "as is" for the price of

2

$2,486,000. That same letter repeated much of what was stated in the January 2001 letter: NHA would give Cotter a "reasonable time period" to conduct due diligence, Cotter would have to commit to constructing a 40,000 square foot building on the property, and Cotter "must execute the standard [United States Department of Housing and Urban Development ("HUD")] Disposition Agreement." (J.A. 22.) The letter also requested that Cotter give up his right of first refusal over the 8 acres, which were then leased to a demolition and recycling company.

In a June 1, 2001 letter, Cotter's counsel responded by providing a written summary of his understanding of the agreement that had been reached between Cotter and the NHA: Cotter would have the right to enter the property for testing and surveying for at least 6 months, he would purchase the property for the appraised price, he would construct a 40,000 square-foot building, and he would waive his rights over the eight acres. NHA wrote back on June 4 that it would enter into a contract with Cotter subject to approval by its Board of Commissioners. The June 4 letter agreed on the price, the time for diligence, and the building. It also stated that, as a condition to any agreement, Cotter would have to give up his right of first refusal over the eight acres. In the last paragraph, the letter asserted that the parties would execute the standard HUD contract according to HUD regulations.

Cotter gave up his rights over the eight acres and, in February 2004 NHA's Board of Commissioners passed a resolution authorizing the sale of the 22 acres to Cotter for the agreed-upon price. A March 17, 2004 letter from NHA informed Cotter of the resolution. It also observed that "we had previously negotiated an agreement with

3

[Cotter]." (J.A. 26). The letter enclosed a formal contract of sale and stated that Cotter must close by May 1, 2004. In an April 13 letter, Cotter stated that he would be ready to close on that date, but objected to provisions of the formal contract. The closing did not take place in May 2004. In letters sent in 2005, Cotter complained to NHA that the debris on the property prevented an environmental assessment. Cotter sent letters to NHA in 2008 about proceeding to closing. NHA responded that the debris on the property, and environmental concerns, continued to be problems.

Cotter filed suit against NHA in 2009. NHA moved to dismiss his Amended Complaint, and the District Court granted the motion. According to the District Court, the June 2001, March 2001, March 2004, and April 2004 letters were merely indications of the parties' bargaining positions, not an agreement. Relying on *Morton v. 4 Orchard Land Trust*, 849 A.2d 164 (N.J. 2004), the District Court concluded that the allegations in the Amended Complaint did not sufficiently allege the existence of an agreement. It then observed that Cotter's claim for specific performance is not an independent claim, but an equitable remedy. As to promissory estoppel, the District Court ruled that there were no allegations of a clear or definite promise, and hence no plausible claim. Finally, the District Court decided that the Amended Complaint's claim of equitable estoppel was insufficient because the letters described in the Amended Complaint did not bestow any contract rights and there was no agreement over the sale.

4

Cotter filed a timely appeal.[1]  The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and we have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

## II.

To plead a breach of contract in New Jersey, a plaintiff must allege that (1) there was a contract, (2) that contract was breached, (3) the breach resulted in damages, and (4) the person suing for breach performed his own contractual duties.  *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2009) (interpreting and applying New Jersey law).  The issue framed in this appeal concerns the first element of the claim.  When do negotiations turn into a contract?[2]

The answer is only when there is a valid offer and acceptance.  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 250 (3d Cir. 2007); *4 Orchard*, 849 A.2d at 170.  Here there was neither.  In its January 2001 letter, NHA stated "we request that Cotter give us an offer to purchase."  (J.A. 22, 45).  This was not an offer, but merely a request for an offer.  *Id.*  Similarly, the March 2001 letter from NHA said that the Authority was "willing" to convey the 22 acres for $2,486,000, yet another signal that NHA was ready to negotiate.  (J.A. 22, 48.).  Paragraph 23 of the Amended Complaint

[1] We exercise plenary review over the District Court's order granting the NHA's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *United States Dep't of Transp. ex rel. Arnold v. CMC Engineering*, 564 F.3d 673, 676 (3d Cir. 2009).  This means that we accept the allegations in the Amended Complaint as true and construe the  allegations in the light most favorable to Cotter.  *Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).  To survive a motion to dismiss, the allegations must state a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[2] As the District Court observed, when documents are integral to a complaint or explicitly relied upon, those documents can be considered in determining whether the complaint states a plausible claim.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  The letters referenced in the Amended Complaint are such documents, and, as such, are considered as part of the Court's analysis.

references the June 1 letter Cotter sent to NHA, which states that an agreement had been reached between the parties. But if this is an allegation that an agreement had been reached, it is a legal assertion, not a factual one, which the District Court properly ignored. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The June 4, 2001 letter from NHA to Cotter stated that "subject to final approval by the Authority's Board of Commissioners, the Authority *will* enter into a contract" that will have certain features. (J.A. 24, 54.) The use of the future tense makes it clear that, once again, NHA was simply setting the stage for the an actual agreement. Nowhere does this letter allege an offer or acceptance.

The March 17, 2004 letter states that the parties had "previously negotiated an agreement" but, once again, any allegation that an agreement had been reached is a legal conclusion, not a factual one. (J.A. 9, 65). Later in the letter (and the allegation of the Amended Complaint incorporating the letter), NHA pitched the following:

> At this time, the NHA is requiring that if your client has a continued interest in this property, it must close on or before May 1, 2004. Please advise me before the close of business on April 15, 2004 if your client desires to acquire this property in its current condition based upon the terms and conditions of our proposed agreement.

(J.A. 9, 65). This is the first offer—a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"— alleged in the Amended Complaint. Restatement (Second) of Contracts § 24 (1981). Paragraph 34 of the Amended Complaint then references an April letter in which Cotter stated that he was "ready to close May 1, 2004" but then pointed to problems with the contract proposed in the March

6

17 letter before drawing attention to a copy of the contract enclosed with "requisite changes." (J.A. 10, 67). This was a counter-offer, which the next paragraph of the Amended Complaint states was not executed by NHA. *Fletcher-Harlee Corp.*, 482 F.3d at 250; Restatement (Second) of Contracts § 59 ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer.").

With this factual and legal framework established, we agree with the District Court that the Amended Complaint failed to state a plausible breach of contract claim because the Amended Complaint nowhere alleged a valid offer and acceptance. As the District Court concluded, this makes the instant case similar to *4 Orchard* where there was a course of dealing culminating in a "flurry of letters" but the context made it apparent that the parties intended to be bound only by a written contract. 849 A.2d 164. Here, the allegations are that no offer was made until March 17, 2004, that the offer included a written contract, and that the offer was rejected in favor of a counter-offer. "No offer and no acceptance means no contract." *Fletcher-Harlee*, 482 F.3d at 251. The District Court properly dismissed Cotter's breach of contract claim because there was no plausible entitlement to relief on such a claim, based on the allegations in the Amended Complaint.

The District Court was also correct to point out that, without a contract, there can be no claim for specific performance, which is an equitable remedy for breach of contract.

7

We also agree with the District Court's decision to dismiss the claim for promissory estoppel. In New Jersey, the elements of that claim are "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Bd. Of Chosen Freeholders of County of Burlington*, 944 A.2d 1, 19 (N.J. 2008). The problem is that the only promises alleged in the Amended Complaint are promises to eventually enter into a contract and a promise in the form of a contract that was rejected. Any detrimental reliance on such promises was unreasonable.

Cotter's claim for equitable estoppel requires that he plead "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation will probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." *O'Malley v. Dep't of Energy*, 537 A.2d 647, 651 (N.J. 1987) (citing *Horsemen's Benevolent & Protective Ass'n v. Atlantic City Racing Ass'n*, 487 A.2d 707 (N.J. 1985)). But here, there is no allegation of a misrepresentation. The Amended Complaint alleges that NHA would entertain an offer, which it did, that it would authorize a formal contract, which it did, and that it would send Cotter a formal contract, which it did.

This case, like *Fletcher-Harlee* is a "cautionary tale" of offer and acceptance. 482 F.3d at 249. The appellant in *Fletcher-Harlee*, just like Cotter here, failed to sufficiently plead a breach of contract claim and, also just like Cotter here, it asked for permission to re-plead in a further amended complaint. *Id.* at 251. We said "no," reaffirming the long-standing rule that "in ordinary civil litigation it is hardly error for a district court to enter

8

final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." *Id.* at 253. As the court stated in *Fletcher-Harlee,* this rule does not impose an undue burden on civil plaintiffs, who have a ten-day window under Rule 59(e) in which they can file a motion to reopen the judgment and amend the complaint. *Id.* Because Cotter's case is not different from Fletcher-Harlee's in this respect, we find that the District Court committed no error. We decline his request for permission to re-plead.

III.

We will affirm the ruling of the District Court. In short, the Amended Complaint failed to allege the existence of a contract, a promise upon which reliance would have been reasonable, or a misrepresentation. The District Court thus properly granted NHA's motion to dismiss for failure to state a claim.

POLLAK, <u>District Judge</u>, dissenting.

The majority holds that documents exchanged between the parties do not plausibly support the assertion that an agreement had been reached because whether "an agreement had been reached . . . is a legal assertion, not a factual one, which the District Court properly ignored."  Maj. Op. at 6 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  However, *Twombly* and *Iqbal* prohibit courts only from crediting a complaint's "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  Far from simply making a threadbare recital of the elements of a breach of contract claim, the complaint here referenced multiple documents in which both parties referred to an "agreement," and it made factual recitals of the actions that both parties took in reliance upon that agreement.

Accordingly, I respectfully dissent.

1