**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-2609 and 25-1051
_____

SAT AGIYAR, LLC,

v.

7 ELEVEN, INC.

v.

NARESH R. PATEL

SAT Agiyar, LLC,
    Appellant in Nos. 24-2609 and 25-1051
Naresh R. Patel
    Appellant in No. 25-1051
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:19-cv-19994)
District Judge: Honorable Michael A. Shipp
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 3, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion filed: March 4, 2026)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge*.

SAT Agiyar, LLC ("SAT") operated a 7-Eleven franchise in Princeton, New Jersey under a franchise agreement (the "Franchise Agreement") with 7-Eleven, Inc. ("7-Eleven"). After 7-Eleven rescinded SAT's franchise, SAT alleged that 7-Eleven's conduct violated the New Jersey Franchise Practices Act (the "NJFPA") and the implied covenant of good faith and fair dealing. 7-Eleven counterclaimed that SAT breached the Franchise Agreement and impleaded SAT's guarantor, Naresh R. Patel, alleging breach of guaranty. The District Court granted summary judgment for 7-Eleven on all claims. We will affirm the District Court's judgment.

## I. BACKGROUND

In September 2015, SAT and 7-Eleven signed the Franchise Agreement, which permitted SAT to operate a 7-Eleven store in Princeton under certain conditions. One condition required SAT to maintain its 7-Eleven store "as a 24-Hour Operation, unless prohibited by law or [7-Eleven] agree[d] in writing to different operating hours." Appendix (hereinafter "App. __") 61. The parties agreed that if SAT failed to operate the store twenty-four hours per day, 7-Eleven would assess a penalty fee that escalated in proportion to the number of hours per week the store was closed. Another condition required SAT to maintain a minimum net worth of $15,000. Failure to maintain such a net worth was a

2

"Material Breach and constitute[d] good cause" for 7-Eleven to terminate the Franchise Agreement, which it could do on three business days' notice. App. 68.

When SAT and 7-Eleven signed the Franchise Agreement, Princeton prohibited businesses from operating between 2 a.m. and 5 a.m.[1] So SAT and 7-Eleven amended the Franchise Agreement to waive the twenty-four-hour-operation requirement and the penalty fee for (i) the first two years of the Princeton store's operation, or (ii) until Princeton allowed SAT to operate the store twenty-four hours per day—whichever occurred first.

By January 2018, Princeton had not amended its ordinance, and the two-year period had run, so 7-Eleven began penalizing SAT for closing between 2 a.m. and 5 a.m. In March 2018, SAT asked 7-Eleven to waive the penalty fee permanently. 7-Eleven declined to do so but offered to waive the twenty-four-hour requirement and penalty fee for an additional two years. SAT declined the offer. Thus, the status quo continued; SAT closed its Princeton store from 2 a.m. to 5 a.m., and 7-Eleven assessed penalty fees under the Franchise Agreement.[2]

On November 9, 2020, 7-Eleven told SAT that its net worth was below $15,000 and gave SAT until the 18th to cure its alleged breach. When SAT did not, 7-Eleven terminated

_____

[1] At one point in its Opening Brief, SAT claims that Princeton's prohibition operated from midnight to 5 a.m. Later, SAT claims that the bar existed from 2 a.m. to 5 a.m. The relevant ordinance, on which both parties rely, confirms that the hours of prohibited operation were 2 a.m. to 5 a.m.

[2] 7-Eleven claims that it suspended the twenty-four-hour-operation requirement and penalty fee for SAT and all other franchisees from March through December 2020, due to the COVID-19 pandemic. SAT disputes that 7-Eleven waived the fee for the Princeton store, but offers no support for its assertion.

3

the Franchise Agreement and assumed control of the Princeton store. After 7-Eleven took

over the store, it calculated that SAT owed it $94,756.68, which neither SAT nor Patel, its

guarantor, have paid.

SAT sued, and 7-Eleven counterclaimed. After discovery, the following claims

remained: (1) violation of the NJFPA (by SAT against 7-Eleven), (2) breach of the implied

covenant of good faith and fair dealing (by SAT against 7-Eleven), (3) breach of contract

(by 7-Eleven against SAT), and (4) breach of guaranty (by 7-Eleven against Patel, whom

7-Eleven impleaded). The District Court granted summary judgment for 7-Eleven on all

claims. SAT and Patel appealed.

## II.    DISCUSSION[3]

We note at the outset that the parties' four claims are not totally independent. As

explained below, 7-Eleven claims it is not liable for violating the NJFPA because SAT

breached the Franchise Agreement—the same conduct underlying 7-Eleven's breach-of-

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* a District Court's disposition of a motion for summary judgment, "meaning we review anew the District Court's summary judgment decisions, applying the same standard it must apply." *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021). "To prevail on a motion for summary judgment, the moving party must demonstrate 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Any "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and alterations omitted).

contract counterclaim. And 7-Eleven alleges that the damages from SAT's breach are the same funds Patel has not paid as guarantor. So SAT's NJFPA claim is inextricably intertwined with 7-Eleven's counterclaims for breach of contract and breach of guaranty. Thus, we address below only the NJFPA claim—and conclude that SAT breached, warranting summary judgment for 7-Eleven on SAT's NJFPA claim and 7-Eleven's counterclaims. We then address SAT's implied-covenant claim, which, unlike the three other claims, stands on its own. There, too, we agree with the District Court that 7-Eleven is entitled to summary judgment.

### A. The NJFPA

The NJFPA prevents franchisors from "impos[ing] unreasonable standards of performance upon a franchisee," N.J. Stat. Ann. § 56:10-7(e), but franchisors have a defense when the franchisee "has failed to substantially comply with" the franchise agreement, *id.* § 56:10-9. SAT does not dispute that it breached the Franchise Agreement's minimum-net-worth condition, or that that breach constituted a "fail[ure] to substantially comply with" the Franchise Agreement. *Id.* The District Court held that SAT's noncompliance gave 7-Eleven a statutory defense and eliminated any reasonable dispute about its liability.

In SAT's view, the District Court ignored that an unreasonable standard of performance caused its breach in the first place. SAT claims that by penalizing it for failing to operate twenty-four hours per day when it was prohibited by local law from so operating, 7-Eleven left SAT with a "Hobson's choice – either operate the Princeton [s]tore at a loss or not at all." Opening Br. 18. In SAT's view, such a false choice embodies the

5

"arbitrariness, bad intent, or economic ruin" that are hallmarks of unreasonable standards of performance under the NJFPA. *Id.* at 22.

We agree with the District Court. Accepting, *arguendo*, that "arbitrariness, bad intent, or economic ruin" is the standard for an unreasonable-standards claim,[4] we cannot see how 7-Eleven's behavior qualifies. To the contrary, 7-Eleven offered not to charge SAT the penalty fee during the period when SAT's net worth declined and ultimately fell below the minimum. SAT simply chose not to accept the extension because it wanted a better deal in the form of a permanent waiver. We credit SAT's representations that 7-Eleven knew when it built SAT's store that Princeton would not allow operations from 2 a.m. to 5 a.m. (a fact SAT also knew), and that 7-Eleven permanently waived the penalty fee for some other stores prohibited from twenty-four-hour operation by local law. Even so, 7-Eleven's imposition of the fee after SAT turned down 7-Eleven's waiver offer was not unreasonable—it was the product of the parties' original agreement, which did not promise a permanent waiver.[5] Thus, there is no reason to excuse SAT's failure to

---

[4] SAT cites no precedential authority from our Court or any New Jersey state court setting forth its proffered standard, and we have found none.

[5] To the extent that SAT claims 7-Eleven's purported failure to waive the penalty fee during the COVID-19 pandemic supports its unreasonable-standards claim, we disagree. SAT has not supported that assertion, in the District Court or before us, by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), so its bald claim of differential treatment does not create a genuine dispute of fact, *see id.* 56(e)(2). Nor would such a dispute be material, for the reasons discussed.

substantially comply with the Franchise Agreement's minimum-net-worth condition, and SAT's NJFPA claim fails.[6]

## B. Implied Covenant of Good Faith and Fair Dealing

SAT also claims that 7-Eleven's refusal to permanently waive the penalty fee violated the implied covenant of good faith and fair dealing that, in New Jersey, inheres in all contracts. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005) ("Every party to a contract, including one with an option provision, is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."). When 7-Eleven moved for summary judgment, SAT failed to respond to 7-Eleven's implied-covenant arguments. Granting summary judgment, the District Court addressed, and rejected, SAT's arguments about "bad faith" in the context of the implied covenant.

Now, SAT argues "[t]he District Court ignored evidence . . . of 7-Eleven's bad faith course of conduct." Opening Br. 31. But by failing to brief its implied-covenant claim before the District Court, SAT forfeited arguments about that claim on appeal. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("[A]bsent exceptional circumstances, issues not raised before the district court are

---

[6] Because SAT breached the minimum-net-worth condition, the District Court properly granted 7-Eleven's breach-of-contract and breach-of-guaranty counterclaims, which stem from SAT's failure to maintain the required minimum net worth and Patel's failure to pay SAT's resulting liabilities to 7-Eleven, respectively.

[forfeited] on appeal."). Even if we considered SAT's arguments, however, we would see no disputes of material fact precluding summary judgment for 7-Eleven.

As "[t]he party claiming a breach of the covenant," SAT "must provide evidence sufficient to support a conclusion that [7-Eleven] has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club*, 864 A.2d at 396 (internal quotation marks omitted). To make that showing, evidence of "[b]ad motive or intention is essential." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). Here, there is no genuine dispute that 7-Eleven behaved without the "ill motive[]," and did not make the "intentional[ly] misleading assertions," that might offend the implied covenant. *Brunswick Hills Racquet Club*, 864 A.2d at 396. When the parties signed the Franchise Agreement, they knew that SAT's Princeton store would have to close from 2 a.m. to 5 a.m. They knew that 7-Eleven's waiver of the penalty fee would last only two years. There is no evidence that 7-Eleven led SAT to believe that it would extend the waiver permanently or otherwise misled SAT about the terms of an extension. When SAT rejected the terms of 7-Eleven's proposed fee-waiver extension and 7-Eleven began penalizing SAT for closing, 7-Eleven did what the Franchise Agreement expressly allowed. Thus, there is no genuine dispute that 7-Eleven's behavior did not violate the implied covenant of good faith and fair dealing.

SAT's counterarguments are unpersuasive. First, it claims that 7-Eleven failed to disclose that it agreed to the operating-hours restriction "during the land development approval process." Opening Br. 31. But the restriction was not a backroom agreement between 7-Eleven and Princeton; it was a municipal law that Princeton enacted the year

8

before SAT and 7-Eleven signed the Franchise Agreement, and which the parties knew about when they initially agreed to waive the penalty fee. SAT also argues that 7-Eleven imposed a "bad faith standard . . . by forcing" it to ask Princeton to "overturn" the operating-hours restriction before extending the penalty fee waiver. *Id.* That is not what the record shows; instead, 7-Eleven asked SAT to explain what it had "done to strengthen [its] relationship in the community or with local government," App. 611, and after receiving SAT's response 7-Eleven offered to extend the waiver for two years. Finally, even if 7-Eleven stalled when SAT requested an extension, or granted perpetual fee waivers "to similar franchisees in similar situations," as SAT contends, Opening Br. 31, there is no evidence that 7-Eleven misled SAT or "withheld vital information" to "exploit[] the terms of the" Franchise Agreement. *Brunswick Hills Racquet Club*, 864 A.2d at 397. We thus agree with the District Court that 7-Eleven's decision not to permanently waive the twenty-four-hour-operation requirement or the penalty fee did not violate New Jersey's implied covenant of good faith and fair dealing.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

9