**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2274

_____

CRAIG KIMMEL,
                    Appellant

v.

MASSACHUSETTS BAY INSURANCE CO.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:21-cv-12743)
District Judge: Honorable Christine P. O'Hearn

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 8, 2026

Before: HARDIMAN, BOVE, and FISHER, *Circuit Judges*.

(Filed: June 9, 2026)

_____

OPINION*

_____

HARDIMAN, *Circuit Judge*.

This appeal concerns an insurance dispute between homeowner Craig Kimmel and

his insurer, Massachusetts Bay Insurance Company (MBIC). Kimmel appeals the District

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Court's summary judgment for MBIC. We will affirm.

I

A lightning strike downed a tree on Kimmel's property. Its impact, Kimmel alleged, caused extensive damage to his home. Kimmel was insured under a homeowners policy issued by MBIC, which provided coverage for physical loss to the insured property, subject to various terms, conditions, and exclusions. MBIC denied Kimmel's claim after determining that much of the claimed damage already existed and that several policy exclusions otherwise barred coverage. Kimmel filed suit in New Jersey state court for breach of contract and bad faith.

MBIC removed the case to federal court, and later moved for summary judgment. Central to this dispute is the insurance policy's Loss Settlement provision. In relevant part, Section 3.b.(4) states that MBIC "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." App. 403. The parties agree that actual cash value (ACV) means replacement cost less depreciation. Kimmel obtained a repair proposal from a contractor, which estimated the damage would cost $361,015 to fix. The proposal did not provide an ACV figure and the report failed to depreciate Kimmel's property. Kimmel never undertook the proposed repairs.

Citing Section 3.b.(4), MBIC argued that Kimmel's failure to provide evidence of ACV meant that Kimmel had not provided evidence of his damages, an essential element of his contract claim. The District Court agreed and granted summary judgment for MBIC. Kimmel timely appealed.

2

Under New Jersey law, courts interpret insurance contracts in accordance with their "plain and ordinary meaning." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citation omitted). The Policy at issue provides that MBIC "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." App. 403. So until Kimmel completes the actual repair or replacement, Section 3.b.(4) of the Policy's Loss Settlement provision specifies that he can only recover ACV.

Kimmel never provided evidence of ACV. That failure dooms his breach of contract claim because New Jersey law requires him to prove damages. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016). Kimmel offered an estimate of the cost to repair the damage to his property. Yet the proposal did not include any amount for depreciation (a point his expert admitted) nor otherwise attempted to furnish an ACV figure or means of deriving it. Because Kimmel did not provide evidence establishing an essential element of the breach of contract claim, it fails as a matter of law.

Kimmel's arguments to the contrary are unpersuasive. He contends that the District Court "improperly place[d] a burden on the insured that has never been placed on an insured in any other New Jersey case." Kimmel Br. 11. That contention conflates the

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. "We review de novo district court orders granting or denying summary judgment, applying the same test required of the district court and viewing inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Schmidt v. Creedon*, 639 F.3d 587, 594–95 (3d Cir. 2011) (citation modified). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

duties attendant to the claims adjustment process with those that govern a prima facie claim for breach of contract. His legal claim requires that he, as Plaintiff, provide sufficient evidence of damages.

Alternatively, Kimmel suggests that a factfinder could extrapolate ACV from the replacement cost estimate his expert provided under the "broad evidence rule." Kimmel Br. 26–27. The parties here define ACV as replacement cost less depreciation, but under New Jersey law, the broad evidence rule allows factfinders to consider "every fact and circumstance" logically establishing ACV, which includes not only replacement cost less depreciation, but original cost, cost of reproduction, market value, and income-producing potential. *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 443–45 (N.J. 1978); *see also Messing v. Reliance Ins. Co.*, 187 A.2d 49, 51 (N.J. Super. Ct. Law Div. 1962) (factfinders may consider "all evidence logically related to the formation of an accurate estimate of the value of the destroyed or damaged property, for the purpose of ascertaining the [ACV] at the time of the loss"). But Kimmel's report provided no evidence of depreciation (or another way to derive ACV), so he could not establish ACV at trial. As the District Court put it, factfinders cannot be expected "to somehow extrapolate ACV [from replacement cost] without more." *Kimmel*, 787 F. Supp. 3d at 24. Instead, Kimmel had to "provide a developed evidentiary foundation," which might include, for example, depreciation calculations or other valuation metrics "from which ACV may reasonably be determined." *Id.*

Kimmel also argues that Sections 3.b.(1) and 3.b.(2) of the Loss Settlement provision do not require a depreciation deduction for partial losses. But he misreads the

4

Policy; these are coinsurance provisions that have nothing to do with partial or total losses. They specify that the payout varies depending on whether the total amount of insurance is at least 80 percent of the full replacement cost. In any case, Sections 3.b.(1) and 3.b.(2) do not apply yet to Kimmel's claim. Again, Section 3.b.(4) of the Loss Settlement provisions provides that Kimmel is eligible to recover only ACV at this stage because he has not yet repaired the alleged damage. So even if Kimmel were correct, it would not matter because his claim, as of now, falls under Section 3.b.(4), not Sections 3.b.(1) and 3.b.(2).

Finally, Kimmel maintains that the Policy requires the insured to submit an ACV figure only for personal property claims, not real property claims. This argument was not raised below, so Kimmel forfeited it. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors Corp.*, 482 F.3d 247, 253 (3d Cir. 2007). In any event, Section 3.b.(4) applies to dwellings and expressly limits recovery to ACV until actual repairs are completed.

*     *     *

For the reasons stated, we will affirm.