**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

───────────

No. 22-1736

───────────

STEPHEN DRIZOS,

Appellant

v.

PNC INVESTMENTS LLC, DBA PNC Investments

───────────

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:19-cv-01651)
District Judge:  Hon. Cathy Bissoon

───────────

Submitted Under Third Circuit L.A.R. 34.1(a)
May 17, 2023

Before: SHWARTZ, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion filed  August 3, 2023)

───────────

OPINION[*]

───────────

MONTGOMERY-REEVES, *Circuit Judge.*

Stephen Drizos appeals the District Court's order granting summary judgment in

favor of his former employer, PNC Investments ("PNC").  Drizos brought claims alleging

───────────────────

[*]  This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

violations of the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Pennsylvania Human Relations Act ("PHRA"). Because the District Court correctly held that PNC proffered a nondiscriminatory, non-pretextual reason for firing Drizos and granted summary judgment for PNC, we will affirm.

## I. BACKGROUND

PNC hired Drizos in 2008, and he became a Financial Advisor ("FA") in 2015. In 2016, Wendy O'Brien became Drizos's supervisor. **J.A. 466**. As an FA, Drizos worked out of different PNC branches, including PNC's Lebanon Shops Branch, which Amy Rhome-Smith managed.

Drizos suffers from alcoholism. At some point before February 2017, Drizos began having issues with absences and tardiness. After these issues arose, Drizos took intermittent FMLA leave to treat his alcoholism from February 11 through March 9, 2017. Drizos continued to work and perform his normal functions during his intermittent FMLA leave.

In May 2017, Drizos missed several meetings at the Lebanon Shops Branch. O'Brien gave Drizos a verbal warning that "his attendance must improve and that he needed to maintain his regular in-person hours" at the Lebanon Shops Branch. J.A. 904. Drizos continued to struggle with his sobriety and began looking at inpatient programs.

From May 30 through August 30, 2017, Drizos took a full-time leave of absence covered by some combination of short-term disability, long-term disability, and FMLA leave. Drizos did not work during his full-time leave of absence and relied on others to manage his portfolio of accounts.

2

When Drizos returned from leave, he resumed his role as an FA with the same pay and benefits. But about 70 of his managed accounts had become delinquent. Drizos was directed to bring his delinquent accounts up to date. Drizos did not ask for help in updating his accounts, but O'Brien gave Drizos multiple extensions to complete this work.

Additionally, O'Brien instituted weekly check-ins to keep Drizos "on the right track."[1] J.A. 306. Drizos was the only FA required to have these weekly check-ins. O'Brien also required Drizos to notify her and branch managers where he would be throughout the day.

On October 23, 2017, Drizos was involved in a car accident, for which he was hospitalized until midday October 24. Drizos worked from home on October 25. Drizos did not inform O'Brien that he would be out on October 24 or working from home on October 25. Following the accident, O'Brien instituted a call-out procedure, which required Drizos to notify both her and Rhome-Smith if he was not going to be in the office by 9 a.m.

In January 2018, Drizos received another verbal warning for violating the call-out procedure. In mid-February, Drizos was over 30 minutes late to a quarterly sales meeting. O'Brien again spoke with Drizos about his attendance, tardiness, and violations

---

[1] Drizos insists that O'Brien instituted the weekly check-ins *because* of his leave and alcoholism. But Drizos has not pointed to anything in the record to support this contention. The portions of the record cited by the parties show that Drizos missed meetings and received counseling about his attendance before he took his first full-time leave.

3

of the call-out procedure.  On April 11, Drizos missed work and did not call O'Brien or Rhome-Smith in advance.[2]

Sometime in May, Drizos told O'Brien that he was planning to take another leave of absence to treat his alcoholism.  Drizos told O'Brien that he needed time to figure out the details and organize his affairs before he went out.

On May 24, Drizos again violated the call-out procedure.  O'Brien again counseled Drizos on the proper call-out procedure.  On May 31, Drizos missed work to care for his child, but he did not let O'Brien or Rhome-Smith know until 10:48 a.m., in violation of the call-out procedure.[3]  On June 7, O'Brien gave Drizos a final written warning for violating the call-out procedure on May 31.  **J.A. 472, 853–55**.

On June 25, Drizos did not report for work and did not contact O'Brien or Rhome-Smith before his absence.  On June 28, O'Brien met with Drizos to discuss his violation of the final written warning and to inform Drizos that he was fired.[4]  At that time, Drizos still had not finalized his plans for rehab.

---

[2]  Drizos does not dispute that he did not call out on April 11.  Instead, he explains that O'Brien knew that his daughter was born on April 10 and that he would be out that day for her birth.  Drizos does not contend O'Brien knew he would be out on April 11 or that she excused compliance with the call-out procedure.

[3]  Drizos argues that his failure to call out should be excused because he decided not to take parental leave following his daughter's birth.  Drizos understood that O'Brien would be flexible if he needed to take time off to be with his daughter because he was foregoing parental leave.  Drizos has not pointed to anything in the record to suggest that any flexibility in time off excused him from following the call-out procedure.

[4]  Drizos admitted he "had issues with attendance."  J.A. 415.

Drizos filed his complaint on December 20, 2019. Drizos brought claims under the ADA and the PHRA for discrimination, retaliation, and failure to accommodate; and under the FMLA for retaliation and interference. PNC moved for summary judgment on each of Drizos's claims. The District Court granted PNC's motion for summary judgment. Drizos appealed.

## III.    DISCUSSION[5]

Drizos asserts seven claims against PNC. Drizos alleges that his termination resulted from retaliation and discrimination under the ADA and PHRA (Counts I, III, VI, VII). Alternatively, Drizos alleges that PNC did not accommodate his disabilities under the ADA and PHRA (Counts II, VI). Finally, Drizos contends that PNC interfered with his FMLA leave and retaliated against him for invoking his FMLA rights (Counts IV, V). The District Court granted summary judgment in favor of PNC on each of Drizos's claims. For the reasons explained below, we will affirm the District Court.

### A.  Discrimination under the ADA and PHRA

Drizos contends that the District Court improperly granted summary judgment for PNC on his discrimination claims under the ADA and the PHRA.

---

[5] The District Court had jurisdiction over this case under 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for PNC. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In reviewing a motion for summary judgment, we "[d]raw[] all reasonable inferences in favor of the party against whom judgment is sought" and will affirm the grant of the motion "only when no issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law." *Prusky v. Reliastar Life Ins. Co.*, 445 F.3d 695, 699 (3d Cir. 2006) (citation omitted).

"To establish a prima facie case of discrimination, a plaintiff must show (1) that he is disabled within the meaning of the ADA [or PHRA], (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).[6]

If a plaintiff makes a prima facie case, the burden shifts to the employer to supply a legitimate, nondiscriminatory reason for its action. *Fowler v. AT&T Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999)). If the employer does, the burden shifts back to the plaintiff to show that the response is merely a pretext, "meaning evidence that could cause a jury 'either [to] (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (alterations in original) (citing *Walton*, 168 F.3d at 668).

A plaintiff "cannot simply show that the employer's decision was wrong or mistaken[.]" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (citing first *Ezold v. v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); and then

---

[6] The same legal standard applies to disability discrimination claims under both the ADA and PHRA. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010) (citations omitted).

*Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir. 1991)).[7]  Instead, a plaintiff

must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder *could* rationally find them 'unworthy of credence,'" leading to the

inference that the proffered reason was not the actual motivation for the employer's

action.  *Id.* at 764–65 (quoting *Ezold*, 983 F.2d at 531).

Drizos argues that he made a prima facie case of disability discrimination under

the ADA and PHRA, and that PNC's proffered, nondiscriminatory reason was pretextual.

The District Court concluded that even if Drizos made a prima facie case, PNC offered a

nondiscriminatory reason for the termination and that Drizos did not point to anything in

the record showing that this reason was pretextual.  We proceed as the District Court did

and assume without deciding that Drizos made a prima facie showing for his ADA and

PHRA discrimination claims.

Here, PNC asserts that it fired Drizos for violating his final written warning, which

he received after repeated violations of the call-out procedure.  The record shows that

Drizos had attendance issues and repeatedly violated the call-out procedure.  Drizos does

not point to anything in the record, including his own declaration and deposition

testimony, to dispute that he violated his final written warning by not complying with the

call-out procedure in June 2018.  Indeed, during his deposition, Drizos admitted that he

did not follow the call-out procedure after his final written warning.  Thus, PNC has

---

[7]  ADA and Title VII cases are evaluated under the same burden-shifting framework.
*Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

7

provided a legitimate nondiscriminatory reason for terminating Drizos, and the burden shifts to Drizos to show that reason was pretextual.

Drizos argues that six facts show pretext: (1) he never had issues with attendance; (2) O'Brien placed him on heightened supervision; (3) he had to bring his managed accounts up to date after his leave of absence; (4) the April 11 write-up for violating the call-out procedure should have been excused since O'Brien knew he was out with his newborn; (5) his absences on October 23 and 24 should have been excused because Drizos had been in a car accident; and (6) he was the only FA required to follow the call-out procedure. Drizos's attempts to show pretext fail.

Drizos argues that neither O'Brien nor PNC had any issue with his attendance before his first full-time leave of absence. In his brief, Drizos cites to his entire declaration to support this point. But Drizos's declaration does not establish that his attendance issues started after his full-time leave of absence. In fact, as PNC points out, the record shows that Drizos missed several meetings in May 2017, and O'Brien gave Drizos a verbal warning that "his attendance must improve and that he needed to maintain his regular in-person hours." J.A. 904. Drizos has not pointed to anything in the record to dispute these facts.

Drizos also argues that O'Brien placed him on heightened supervision without justification, which shows O'Brien's hostility towards him and that his firing was pretextual. Drizos points to an email where PNC employees set up a meeting to "discuss the merits/risks of placing [Drizos] on heightened supervision." J.A. 799. But a discussion about placing Drizos on heightened supervision does not show that PNC

8

placed him on heightened supervision. And Drizos has not pointed to anything in the record, including his own testimony or declaration, showing that PNC placed him on heightened supervision. Moreover, PNC never used Drizos's purported placement on heightened supervision as a reason for firing him. Therefore, any argument that his purported placement on heightened supervision shows pretext fails.

Drizos also argues that having to bring his managed accounts up to date after his leave of absence shows pretext. Drizos does not explain how having to bring his managed accounts up to date after his leave of absence shows pretext, especially because O'Brien granted Drizos multiple extensions to complete this work. In fact, the managed accounts delinquency appears unrelated to the reason given for his termination. Nothing in the record shows that PNC disciplined, let alone fired, Drizos for anything related to his delinquent accounts. Nor does PNC rely on his delinquent accounts as a reason for his termination. Thus, Drizos's attempt to carry his burden with this argument fails.

Drizos also contends that the write-ups and warnings for his October 23 and 24, 2017, April 11, 2018, and May 31, 2018, all show pretext because each of the absences was excused. But Drizos's argument fails in each of these instances for the same reason. PNC does not argue that the absences were unexcused. More importantly, nothing in the records shows Drizos was written up for any of these absences. Instead, the undisputed record confirms that Drizos was written up in April and May for violating the call-out procedure and faced no discipline for his October absences. Moreover, even if Drizos's failure to call out was justified, this is immaterial because an employer does not have to be factually correct in the reasons it gives for firing an employee; it simply must be non-

9

discriminatory. *See Fuentes*, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." (citations omitted)). To the extent Drizos argues that PNC's reliance on minor infractions of the call-out procedure proves pretext, he is wrong because an employer's decision to fire someone does not need to be a good or even reasonable business decision; it simply cannot be because Drizos was disabled. *Id.* Drizos does not carry his burden to show pretext with this argument.

Finally, Drizos argues the call-out procedure itself proves pretext because he was the only FA who was subject to it. But Drizos has provided no citations to the record to support the theory that PNC treated him differently than other employees with attendance issues.

In sum, we agree with the District Court that PNC met its burden to articulate a nondiscriminatory reason for Drizos's termination and that Drizos failed to point to evidence in the record showing that PNC's proffered reason was pretextual. Thus, we will affirm the District Court's grant of summary judgment.

### B. Retaliation under the ADA, PHRA, and FMLA

Drizos alleges that the District Court improperly granted summary judgment to PNC on Drizos's claims for retaliation in violation of the ADA, FMLA, and PHRA.

"To prevail on a retaliation claim . . . , the plaintiff must prove that (1) [he] invoked [his] right to [] leave, (2) [he] suffered an adverse employment decision, and

10

(3) the adverse action was causally related to [his] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508–09 (3d Cir. 2009)).[8] Claims based on circumstantial evidence, like the one here, are assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lichtenstein*, 691 F.3d at 302.

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case. *Id.* To establish a prima facie case, the plaintiff "must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of [his] retaliation claim: (a) invocation of [a] right, (b) termination, and (c) causation." *Id.* (citing first *Erdman*, 582 F.3d at 508–09; and then *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)). If a plaintiff can do so, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its decision. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If an employer meets this burden, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the employer's] articulated legitimate reasons." *Id.* (first alteration in original) (quoting *Fuentes*, 32 F.3d at 764).

---

[8] The standard for retaliation under the ADA, FMLA, and PHRA is substantially the same. *Lichtenstein*, 691 F.3d at 302–03; *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300–01 (3d Cir. 2007); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015); *Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 759 (3d Cir. 2004).

11

Even if Drizos could establish a prima facie case, his argument fails. Drizos again argues that the reason for his termination—violating the call-out procedure after receiving a final warning—is pretextual. Drizos relies on the same arguments discussed and disposed of above. As explained, he has not met his burden. Therefore, we will affirm the District Court's grant of summary judgment on his retaliation claims.

### C. Failure to Accommodate under the ADA and PHRA

Drizos brought a claim for failure to accommodate under the ADA and PHRA, alleging that he requested reasonable accommodation for his alcoholism when he requested and applied for leave under the FMLA in July of 2018. A plaintiff bringing a failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (citing *Colwell*, 602 at 504).

The District Court granted summary judgment for PNC on this claim, holding that Drizos "[did] not even attempt" to "satisfy the third and fourth prongs" of his prima facie case. J.A. 10.

On appeal, Drizos argues that PNC did "nothing to interact with him[] despite being familiar with the interactive process." Drizos's Op. Br. at 47 (internal citations omitted). Because Drizos did not make this argument regarding the third prong to the

12

District Court, we will not consider it for the first time on appeal.[9] *Taha v. Cnty. of Bucks*, 862 F.3d 292, 299 (3d Cir. 2017) ("[A]bsent exceptional circumstances, issues not raised before the district court are waived on appeal." (alteration in original) (quoting *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007))). Moreover, Drizos still does not make any argument regarding the fourth prong—whether he could have been reasonably accommodated. Because Drizos forfeited any argument about the third prong and makes no argument on the fourth prong of his ADA and PHRA failure-to-accommodate claims, Drizos's claims fail. Thus, we will affirm the District Court's grant of summary judgment as to these claims.

### D.     FMLA Interference

Drizos argues that the District Court erred by granting summary judgment for PNC on his FMLA interference claim. Drizos alleges that during his first full-time leave of absence, "PNC Investments allowed his work to accumulate while he was on leave and then required him to complete it immediately upon his return." Drizos's Op. Br. at 52. Drizos asserts that this "significantly increased his workload and altered his job duties" so he did not return to an "equivalent" position from the one he left. *Id.*

"When an employee returns from FMLA leave, the employer must restore the employee to the same or equivalent position he held, with equivalent benefits and with

---

[9] Judge Shwartz would not rely on forfeiture as the reason to affirm but rather would affirm because the record viewed in Drizos's favor does not support his failure to accommodate claims. Among other things, the record shows that PNC had accommodated him in the past and was working with him regarding options for his final leave request.

conditions of employment comparable to those he had when he left." *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (citing 29 U.S.C. § 2614(a)). An equivalent position is: one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority. 29 C.F.R. § 825.215(a).

The parties do not dispute that Drizos's pay, benefits, and position stayed the same. Before taking leave, Drizos's job duties included reviewing managed accounts. Though he typically would not have to review 70 delinquent accounts, O'Brien gave Drizos multiple extensions to complete this task. The FMLA provides that an employer must reinstate an employee to an equivalent position after leave, not that their leave has no impact on their work.

Asking Drizos to perform tasks that he traditionally performed but had accumulated in his absence, while receiving the same pay and in the same position and multiple extensions to complete this work, does not constitute interference under the FMLA. Moreover, if PNC had transferred Drizos's accounts while he was out to another FA, this would have substantially affected his pay and denied Drizos "his main source of compensation while he was on leave." J.A. 46–47. Accordingly, we will affirm the District Court's grant of summary judgment as to Drizos's FMLA Interference claim.

## IV.    CONCLUSION

For the reasons discussed above, we will affirm the District Court.

14